## LELLMAN ET AL. v. MILLS.

CHATTEL MORTGAGES—CHATTEL MORTGAGES OF PARTNERSHIP PROP-
ERTY—PARTNERSHIP—PLEADINGS—AMENDMENT—PRACTICE—APPEAL
AND ERROR—EVIDENCE—JURY IN EQUITY CASES—INSTRUCTIONS.

1. Under the statute requiring each member of a partnership to
   execute and acknowledge an instrument intended as a
   chattel mortgage for and on behalf of the partnership, it is
   a prerequisite to a valid chattel mortgage of partnership
   property that every member of the partnership should
   sign it.

2. An instruction held to correctly state the law which charged
   that if it should be found that a chattel mortgage in con-
   troversy was given upon property of an existing partnership,
   and was not executed and acknowledged by each and every
   member of the partnership, it would not in that event be a
   valid mortgage of the partnership and would not bind the
   partnership property.

3. A partner's interest in firm property is only his proportion in
   the surplus after the payment of partnership debts, and the
   settlement of the partnership accounts; until such settle-
   ment occurs, it is impossible to determine the extent of his
   interest.

4. The want of notice on the part of a mortgagee named in a
   chattel mortgage of partnership property that the property
   was partnership property will not, for that reason alone,
   render the mortgage valid.

5. It is not necessary, in order to question the validity of a chat-
   tel mortgage of partnership property on the ground that it
   was not executed by each and every member of the partner-
   ship, as required by statute, that the petition should allege
   the mortgagee to have been without notice that the property
   mortgaged was partnership property.

6. That a chattel mortgage of partnership property, though not
   executed by each member of the partnership as required by
   statute, was executed under circumstances sufficient to
   operate by way of estoppel to prevent the assertion of a
   right to the property by the partner who did not sign the
   mortgage, or by the creditors, as against the mortgagee,
   that would be defensive matter, in a suit brought to cancel
   the mortgage, to be alleged and proved by the mortgagee.

7. A defendant having submitted in open court to a hearing of
   a motion after judgment to amend the petition to conform
   to the proofs, without objecting to the motion or hearing

for want of notice, cannot be heard to object to the amendment on that ground in the appellate court on error.

8. A defendant cannot be heard to complain in the appellate court on error of an order permitting an amendment to the petition after judgment to conform to the proofs, on the ground that no notice was given him of the motion to amend, though the motion was not put into formal shape and filed until after the hearing, where it appears that he submitted to a hearing of the motion in open court without objecting thereto on the ground of the want of notice or that the motion was not in writing.

9. Under the statute authorizing it, amendments of pleadings to conform to the proof should be liberally allowed, where justice will be thereby promoted. (Rev. Stat. 1899, Sec. 3588.)

10. An amendment of a pleading after judgment to conform to the proof should be allowed only in furtherance of justice, and when it will not change substantially the claim or defense.

11. In a suit brought by a trustee in bankruptcy to cancel a chattel mortgage given by the bankrupt upon alleged partnership property, on the ground that the mortgage was void because not executed by each partner as required by statute, the petition alleged the existence of a partnership; that the property administered upon by the trustee was the property of the partnership; that the bankrupt and the partnership were insolvent when the mortgage was given; that the property had been unlawfully mortgaged, and that the mortgage prevented the plaintiff, trustee, from equitably apportioning the property mortgaged towards the satisfaction of debts for which claims had been filed in the bankruptcy proceedings; and the petition prayed for a decree declaring the property to be partnership property and the mortgage to be null and void. The evidence received without objection clearly established the insufficiency of the assets in the plaintiff's hands, including the mortgaged property, to pay the creditors. *Held,* that an amendment to the petition by the insertion of an allegation to the effect that the assets in plaintiff's hands were insufficient to pay all creditors was properly allowed after judgment to conform the same to the proof.

12. In proving a partnership between other parties on a certain date by their conduct a party is not confined to proof of acts on the exact date in question, but evidence tending to show a partnership at an earlier date, if not too remote,

is always admissible, since a partnership shown to exist on a certain date will be presumed to have continued unless something to the contrary appears.

13. Plaintiff, a trustee in bankruptcy, alleged and sought to prove the existence of a partnership between the bankrupt, who was a defendant in the case, and another in December, 1901, when a chattel mortgage upon alleged partnership property had been executed by the bankrupt to his co-defendant. *Held,* that certain drafts drawn upon the alleged partners in their firm name in January, March, July and November, 1901, respectively, and marked paid, and a bill against the firm also marked paid, found by the plaintiff among the papers of the bankrupt in the place of business formerly conducted by him and wherein was located the mortgaged property, were properly admitted in evidence as tending to prove the fact of partnership at the date of the mortgage.

14. The written consent of an alleged co-partner of a bankrupt that the trustee in bankruptcy might include the partnership property in administering the bankrupt estate held to have been properly admitted in evidence for the purpose of establishing the trustee's right to question the validity of a chattel mortgage executed by the bankrupt upon alleged partnership property, in a suit by the trustee for the cancellation of the mortgage.

15. The written consent of an alleged co-partner to the inclusion of the partnership property in the administration of the estate of a bankrupt would not in itself amount to proof that certain property alleged by the trustee to be partnership property and to have been unlawfully mortgaged by the bankrupt was in fact property of the partnership, but it might have some effect as contradictory of such alleged co-partner's testimony that the partnership had been dissolved prior to the bankruptcy proceedings and the execution of the mortgage.

16. It was not prejudicial error to exclude testimony to the effect that the alleged co-partner in explanation of his written consent to the inclusion of the partnership property in the administration of the estate of the bankrupt at the time verbally stated that he was willing that the partnership assets, if any, might be subjected to the claims of the firm creditors.

17. That a witness was unable to state what the alleged co-partner said when he signed such written consent would not have been so beneficial to the party denying the existence

of the partnership as to render the exclusion of testimony to that effect prejudicial error.

18. In a suit by a trustee in bankruptcy to cancel a chattel mortgage upon alleged partnership property executed alone by the bankrupt without the concurring signature of his alleged co-partner, where the existence of the partnership was denied, a prior mortgage upon the same property executed by both of the alleged partners was properly admitted in evidence as tending to show the firm ownership of the property.

19. In the absence of an exception properly reserved a ruling of the trial court in excluding testimony is not properly before the appellate court on error.

20. The verdict of a jury in cases purely equitable in character is merely advisory, and the court may adopt it or disregard it altogether, and proceed to make its own findings upon the evidence, and whether the verdict be simply adopted, or separate findings be made, either harmonizing or conflicting with the verdict, the ultimate conclusion will be that of the court, whose duty it is in all such cases to determine the questions of fact as well as of law.

21. An erroneous instruction to the jury in a case purely equitable in character is not in itself ground for reversal; but if it appears from the instructions in such a case that the conclusion of the trial court, in adopting the verdict of the jury, was based upon a misconception of the law as applied to the evidence or facts, under the issues, that may constitute sufficient ground for reversal on error.

22. Mere dissolution without more will have no effect upon the ownership of partnership property.

23. Though an agreement between partners for a dissolution and a separation of the joint property may have the effect of altering the equitable ownership, if made bona fide and not fraudulent as against creditors, the agreement to have that effect must be executed and not executory merely.

24. The evidence held sufficient to sustain a finding to the effect that a partnership had not been dissolved, and that certain property included in a chattel mortgage executed by a bankrupt was at the time property of the partnership so as to render it invalid because not signed by each and every member of the firm.

[Decided December 18, 1906.]                    (87 Pac., 985.)

ERROR to the District Court, Uinta County, HON. CHARLES E. CARPENTER, Judge.

Stephen A. Mills, as trustee in bankruptcy of the estate of Fred Lellman, a bankrupt, brought the action against the bankrupt and another to cancel a chattel mortgage executed to the latter by the former upon property alleged to be property of a partnership composed of said bankrupt and one James Hackman. From a judgment in favor of the plaintiff the defendants prosecuted error. The facts are stated in the opinion.

*J. H. Ryckman* and *S. T. Corn,* for plaintiffs in error.

The petition was insufficient, and the demurrer should have been sustained for the reason: (1) That the representative capacity of the plaintiff was not sufficiently alleged. (Judah v. Fredericks, 57 Cal., 389; 22 Ency. Pl. & Pr., 193; R. Co. v. Schmidt, 4 O. Cir. Dec., 538; Wilson v. Polk Co., 112 Mo., 126.) (2) That the mortgagee was not a creditor of the bankrupt was not alleged, nor the names of the creditors or the amounts due them, nor whether there were in fact other creditors of either the bankrupt or partnership. (Rowland v. Collman, 45 Ga., 204.) (3) The mere allegation that the mortgage was fraudulently executed without showing the existence of creditors was insufficient. (Leasure v. Forquer, 27 Or., 334; Emery v. Yount 7. Colo., 107.) (4) The facts supposed to constitute the fraud were not set out. A general allegation of fraud is a mere conclusion of law. (5 Ency. Pl. & Pr., 567; 9 id., 686, 687.) (5) The insufficiency of the funds in the trustee's hands was not alleged. (Mueller v. Bruss, 112 Wis., 406; Deland v. Miller, 119 Ia., 369.)

The motion to amend the petition after judgment was improperly granted, first, because no notice of the motion had been given the defendant as required by the statute. (R. S. 1899, Secs. 3610, 3597, 3598; Nance v. People, 54 Pac., 633; 21 Ency. L., 583; 12 O. Cir., 4; 18 id., 313; 5 O. Cir. Dec., 335; 10 id., 180.) Second, there was nothing to amend, for the petition failed to state a cause of action, and was, therefore, not amendable. (1 Ency. Pl. & Pr., 510; Smith v. Jackson, 2 Paine, 486; Fisher v. Ruth-

erford, 1 Baldw., 188.) The power to amend after judgment must be sparingly exercised. (48 O. St., 443; 1 Ency. Pl. & Pr., 605.) The amendment was one of substance and should not have been allowed except upon condition of payment of costs and consent to a new trial. (1 Pl. & Pr., 605.) The judgment should have been vacated to allow the defendant to controvert the new matter. (Id., 607; Jaggar v. Cunningham, 8 Daly, 511.) The numerous defects of the petition were not curable by verdict.

The action is not maintainable without allegation and proof that the mortgagee had notice of the fraud or defects in the mortgage. (Prewit v. Wilson, 103 U. S., 22; 14 Ency. L., 270; Seeleman v. Hoagland, 19 Colo., 231; Burdsall v. Waggoner, 4 Colo., 256; Myers v. Kinzie, 26 Ill., 38; Willis v. Thompson, 93 Ind., 62; Ball v. Barnett, 39 Ind., 53; Lipperd v. Edwards, 39 Ind., 165; Johnson v. Johnson, 3 Metc., 65; Ruhl v. Phillips, 48 N. Y., 125; Sheeley v. Boothe, 73 Mo., 74; Herring v. Wickham, 29 Gratt., 628; Kenny v. Daw, 10 Mart., 577; Maginac v. Thompson, 7 Pet., 348; Fifield v. Gaston, 12 Ia., 218.) If Lellman owed the mortgagee he had a right to give her security, no matter how much he owed others.

When a retiring partner sells to the other partner or to a third person, his equity is gone, and the derivative equities of the creditors are at an end. (Case v. Beauregard, 99 U. S., 119.)

Statements by partners to friends and creditors to the effect that the partnership is dissolved are admissible in evidence by them to show dissolution. (Emerson v. Parsons, 46 N. Y., 560.) Dissolution is proved in the same manner as the formation of a partnership. (Gilbert v. Whidden, 20 Me., 368.) The evidence established the fact of dissolution prior to the mortgage, and the jury should have been instructed that the partnership had ceased before the execution of the instrument in controversy. (Grew v. Walker, 17 Ala., 824.) Public notice is not essential to dissolution. It may be effected by mutual consent by merely ceasing to do business as partners and dividing the property.

(Lovejoy v. Spafford, 93 U. S., 441; Richardson v. Gregory, 126 Ill., 166.) Notice is only necessary to revoke the agency of the partners as to third persons. (22 Ency. L., 177; Wardwell v. Haight, 2 Barb., 549; Bank v. McChesney, 20 N. Y., 240.) An instruction not based upon pleadings or evidence is error. (1 Blash. Instr., 83; 11 Pl. & Pr., 158; Hughes Instr., 80.)

*B. M. Ausherman,* for defendant in error.

A general demurrer does not raise the question of the legal capacity of the plaintiff to sue; and hence the demurrer in this case which assailed the petition on the sole ground of the insufficiency of its statement of facts to constitute a cause of action was not a proper objection to the alleged insufficiency of the allegations as to the representative capacity of the plaintiff. (R. S., Sec. 3535; Walsh v. Byrnes, 39 Minn., 527; Radabaugh v. Silvers, 35 N. E., 694; Sanborn v. Hale, 12 Neb., 318; Viburt v. Frost, 3 Abb. Pr., 119; Murray v. McGarigle, 69 Wis., 483; James v. James, 77 Pac., 1082; Maxwell's Code Pl., 371; Bliss Code Pl., 409a.)

This is not a case alleging merely the fraudulent conveyance of property, but an unlawful mortgage. The petition stated sufficient facts to constitute a cause of action for the cancellation of the mortgage illegally executed by a single partner. The mortgage was void for the reason that it covered partnership property and was not signed by each partner. (R. S., Sec. 2808.) The trustee in bankruptcy is presumed to represent the creditors of the bankrupt, and the burden is upon those denying his authority. (Oliver v. Hilgers, 86 Minn., 35.) The right of action on the part of the creditors to set aside a conveyance of the bankrupt passes to the trustee. (Bankrupt Act, 1898, Sec. 70a.)

The first suggestion that the petition failed to allege the insufficiency of the funds in the hands of the trustee came from the defendants below at the argument of the motion for new trial. Thereupon, application was made to amend if the court should entertain any doubt about the matter.

Counsel for plaintiff believed the petition to be sufficient in that respect, and the proof amply covered the question. The amendment was properly allowed. (R. S., Sec. 3588; Redman v. Ry. Co., 3 Wyo., 678; Ramsey v. C. C. Co., 13 Pac., 247; 3 Cyc., 294.)

The agency of either partner cannot be terminated nor liability to creditors and persons doing business with the firm avoided, until due and legal notice is given. (Lindley Part., 214; Wagon Co. v. Rummell, 14 Fed., 155, and 12 Fed., 658; Arnold v. Hart, 52 N. E., 936; Band, &c., v. Watson, 45 L. R. A., 547.)

The partnership being unable to pay its debts, or having been at the time of giving the mortgage, it was insolvent. (*In re* Ramazzina, 42 Pac., 970; Washburn v. Huntington, 21 Pac., 305; Sacry v. Lobree, 23 Pac., 1088.) A mortgage given under such conditions as surround this case, involving all property of every kind, even though signed by the proper parties, is void and fraudulent as against creditors, there being no preference authorized by the statutes of our state. (*In re* Hemstreet, 139 Fed., 958.) Fraud is vividly stamped upon every act of the defendants in this proceeding and the court and the jury have not permitted it to go unnoticed. It is the acts of the bankrupt and the circumstances surrounding them that furnish the evidence of fraud. The continual existence of the partnership up to the date of the execution of the mortgage was clearly shown by proof of the conduct of the parties.

POTTER, CHIEF JUSTICE.

This is an action brought by Stephen A. Mills as trustee in bankruptcy of the estate of Fred Lellman, a bankrupt, against the said Fred Lellman and one Mary M. Guild (his daughter) to set aside a chattel mortgage given to the latter by Lellman December 14, 1901, covering the furniture and other personal property located in the Daly Hotel in the town of Diamondville, Wyoming. The petition alleged the appointment and qualification of the plaintiff as trustee of the estate of said Lellman, a bankrupt;

that the mortgaged property belonged to a partnership composed of said Lellman and one James Hackman, under the firm name of Lellman and Hackman; that at the time of the execution of the mortgage and during the existence of the partnership the said Lellman and said partnership were insolvent, which fact the said defendants knew at the time of the execution of the mortgage; that Hackman, the other member of the partnership, had in the course of the administration of said bankrupt estate filed with the referee in bankruptcy consent and authority for the said plaintiff as trustee to include in the administration of the affairs of said estate the property of said partnership; and that the chattel mortgage aforesaid was given without consideration and with intent to hinder, delay and defraud the creditors of Lellman and the partnership. By amendment permitted on the trial without objection it was further specifically alleged that on the date of the execution of said chattel mortgage and for many years prior thereto a partnership had existed between said Lellman and Hackman; that it had not been dissolved and that it existed at the time of the filing by Lellman of his petition in bankruptcy. By further amendment permitted by the court after judgment to conform to the proofs it was alleged, "That the assets in plaintiff's hands were at the commencement of this action and are at the present time, and have been during the period of his trust insufficient to pay all creditors."

After the overruling of separate demurrers to the petition, the defendants jointly filed an answer denying generally each and every allegation contained in the petition; and, after the first amendment to the petition, they filed an amended answer denying the partnership between Lellman and Hackman on the date of the execution of the chattel mortgage aforesaid, and alleging the dissolution of such partnership by mutual agreement and the acts of the parties in the month of January, 1901, and that the property covered by the mortgage in question and all other property of the partnership located at Diamondville became the individual property of said Lellman, subject to the prior en-

cumbrances thereon, and that the property of the partnership at Evanston became the individual property of said Hackman; and that at the time the mortgage was executed said Lellman was the owner of all the property described therein. A reply was filed denying generally the allegations of the amended answer.

A jury was impaneled in the cause and after hearing the evidence and the instructions of the court they returned a verdict for the plaintiff. Thereupon a judgment was entered which recited that the court adopted the verdict of the jury, and ordered and decreed the cancellation of the chattel mortgage aforesaid.

The defendants below complain of that judgment on error. It appears from the evidence that in 1899 Lellman and Hackman became partners in business at Hilliard in this state, and subsequently, as such partners, engaged in the hotel business at Evanston and Diamondville in this state. Hackman took personal charge of the business at Evanston and Lellman at Diamondville. At the latter place they built a hotel known as the Daly Hotel, upon which a mortgage was executed by them at or about the time that it was built to the Diamondville Coal and Coke Company, and upon purchasing the furniture for said hotel a mortgage covering the same was executed to the Blyth & Fargo Company of Evanston, from whom we understand the furniture was originally purchased, which mortgages were in existence as security for the balance due thereon, respectively, at the time Lellman executed the chattel mortgage in question.

Upon the trial no attempt was made to show that the mortgage sought to be cancelled was without consideration. On the contrary, it appeared from the evidence introduced on behalf of the plaintiff that the claim of the mortgagee, presumably the claim intended to be secured by the mortgage, had been proven and allowed against the bankrupt estate and, together with all other allowed claims, had been ordered to be paid out of the assets of the partnership of Lellman & Hackman, for the reason that, as found by the

referee in bankruptcy, the debt had been contracted for the benefit of the partnership. Beyond proof showing the insolvency of Lellman and the partnership there is practically no evidence tending to show actual fraud in the execution of the mortgage. Without perhaps entirely abandoning that feature of the case, the plaintiffs, upon the trial, relied chiefly upon the alleged fact that the mortgage covered partnership property, and that it was invalid for any purpose under Section 2808, Revised Statutes of 1899, which requires a chattel mortgage of partnership property to be signed by each member of the partnership. And in addition to the showing as to insolvency, the evidence of both parties was chiefly confined to proof upon the question of the existence of the partnership, and whether the property mortgaged was or was not, at the time of the execution of the mortgage, partnership property.

The chattel mortgage purports to be a mortgage between the said Lellman and the said Guild, and to convey, subject to the conditions therein expressed, the personal property therein described. There is nothing in the mortgage manifesting an intention to convey merely the interest of Lellman as a partner, but the property is treated throughout the instrument as the individual property of Lellman, who alone signed and acknowledged the mortgage. Section 2808 aforesaid provides as follows: "It shall be necessary for each member of a co-partnership to execute and acknowledge a mortgage, bond, conveyance or other instrument intended to operate as a chattel mortgage for and on behalf of the co-partnership *Provided,* That a chattel mortgage may be given to a co-partnership in its co-partnership name without enumerating the several members thereof." And Section 2810 provides that a mortgage given to a co-partnership shall only be released, satisfied, assigned or transferred either by an endorsement upon the original instrument or by an instrument executed and acknowledged by each member of the co-partnership.

Section 2808 was considered and construed by the United

States Circuit Court for the District of Wyoming in the case of Ridgely v. First National Bank, 75 Fed., 808. District Judge Hallett, who presided in the trial of that case, held that under that section it was necessary, in order to make a valid chattel mortgage of partnership property, that each member of the firm should sign the mortgage. The learned judge said: "There can be no valid mortgage of co-partnership property except by an instrument which shall be executed by all members of the co-partnership. I do not agree with counsel that an instrument executed by part of the members of the co-partnership may be a mortgage of the interest of those members in the co-partnership property. In order to have a mortgage of that character, it would be necessary that the instrument on its face should purport to be a mortgage of the interests of the co-partners signing it. A mortgage which on its face is made to be a mortgage of the entire partnership property, and is signed by some of the members of the partnership, but not all, is, in my judgment, under this statute, a void instrument, of no force and effect, either of the partnership property, or the interest of the persons signing it in the partnership property." And it was held that such a mortgage not signed by all of the members of the partnership differed from a mortgage valid upon its face, but alleged to have been fraudulently made, in respect to attacks upon it by creditors and others the following statement being made on that subject: "As to what was said by counsel as to the position of a creditor in attacking a chattel mortgage, to the effect that one must have process, and must appear in the attitude of a creditor, I think that applies to the case of a mortgage which may be recognized as such." In concluding the opinion it was said of the mortgage there in question which had not been signed by one of the partners, "I think it was never a mortgage of the co-partnership property, and that it did not convey to the plaintiffs any interest whatever in the co-partnership property." In that case the holders of the mortgage had brought suit to re-

cover the proceeds of sales of certain property described in the mortgage which had been turned over to the defendant by the firm, subsequent to the execution of the mortgage, to satisfy a debt due from the firm; and the court treated the defendant as a purchaser, and, as already indicated by quotations from the opinion, the defendant was permitted to attack the mortgage as void because of its improper execution.

We do not understand that counsel here dispute the correctness of the construction placed upon the statute in that case. Indeed, without objection, the trial court, in its instructions to the jury, quoted the material clause of Section 2808, and stated that if the jury should find from the evidence that the partnership of Lellman & Hackman was an existing partnership at the time of the execution of the mortgage, and that the mortgage was given upon the partnership property, and was not executed and acknowledged by each and every member of the partnership, then and in that event the mortgage would not be a valid mortgage of the co-partnership and would not bind the co-partnership property. And, at the request of defendants below, the jury were instructed that if they should find from the evidence that the partnership had been dissolved prior to the execution of the mortgage, and that the property described in the mortgage thereby became the individual property of Lellman, and was his individual property, and not partnership property, when the mortgage was executed, and that he had a right then to mortgage it, then the verdict should be for the defendants. We are satisfied that those instructions correctly stated the law of this state upon the subject. It is evident that the Legislature intended as a prerequisite to a valid chattel mortgage of partnership property that every member of the partnership should sign it, and the language employed clearly expresses and carries out that intention.

Where, in the absence of statutory regulation, it has been held that one partner may execute a valid chattel mortgage upon the property of the partnership to secure a partnership

debt, that rule has been adopted in view of the ordinary
relations existing between partners and between each of
them and the property of the firm, and the power of each
partner in respect to such property and the firm business.
Every partner is generally regarded as the general agent
of the firm to carry out its objects and transact its business
in the ordinary way. And hence it has been held, and that
is no doubt the prevailing rule in the absence of statute,
that each partner, by virtue of the relation of partnership,
and of the community of right and interest of the partners,
has full power and authority to sell, pledge or otherwise
dispose of all personal property belonging to the partner-
ship, for any purpose within the scope of the partnership
business, and may therefore, without the concurrence of his
co-partners, mortgage the partnership property to secure the
payment of a partnership debt. (Bank v. Bank, 136 U. S.,
223.) But the statute under consideration clearly pre-
scribes a different rule as to chattel mortgages. Its effect
is to restrict the agency of the individual partner in respect
to such instruments, and to deprive him of the power other-
wise held to reside in him by reason alone of his relation
of partner to mortgage the personal property of the part-
nership, either by signing the firm name to the instrument,
or the names of his co-partners by himself, or by merely
signing his own name. Thus the requirement of the statute
effectually withdraws the only support of the rule elsewhere
prevailing which permits one partner under certain condi-
tions to execute a valid chattel mortgage upon partnership
property.

It is not contended that the mortgage in controversy was
in any event a lien upon the interest of Lellman, assuming
the existence of the partnership, nor would such a conten-
tion even if correct be of any practical benefit to the de-
fendants, since the evidence clearly discloses that he had
no remaining interest after the payment of the partnership
debts. We need not, therefore, express any opinion as to
whether a mortgage of partnership property not executed

by all the partners as required by statute could be construed as a mortgage of the interest of the partner or partners executing it, without such an intention being mentioned in the mortgage. In the case of Ridgely v. Bank, *supra*, Judge Hallett held that the mortgage could not be so construed. A partner's interest in firm property is only his proportion in the surplus after the payment of partnership debts, and the settlement of the partnership accounts, and until that occurs it is impossible to determine the extent of his interest; and so it is held that a mortgage by one partner of his interest does not create any actual lien upon the partnership property itself, but is only a lien upon the interest of the partner as finally ascertained. (Jones on Chat. Mortgages, Sec. 45; 1 Cobbey on Chat. Mort., Sec. 434.)

There is some contention as to the absence of an allegation in the petition of notice on the part of the mortgagee of the alleged fraud of the mortgagor in the execution of the mortgage, but the point seems to be directed to the sufficiency of the petition in respect to the charge that the mortgage was made for the purpose of hindering, delaying and defrauding creditors, which charge, upon the evidence, is eliminated from the case as a substantive ground of recovery. It is clear, we think, that want of notice on the part of a mortgagee named in a chattel mortgage of partnership property that the property was partnership property will not for that reason alone render the mortgage valid. The statute is not confined to chattel mortgages executed in favor of one who has actual notice or is chargeable with notice of the ownership of the property, but it is general in its terms, and plainly requires that *every* chattel mortgage to operate on behalf of a partnership shall be signed and acknowledged by each partner. The statute having taken away from a single partner all power which he might otherwise have had to create a valid lien by chattel mortgage upon partnership property, an attempt on his part, acting alone, to do so is analogous to the execution of a chattel mortgage upon property not belonging to the mortgagor;

and it is not conceivable in the latter case that the mere fact that the mortgagee did not know that the property was owned by another would give him a valid and enforceable lien upon it against the true owner or his creditors. It was not necessary, therefore, that the petition should allege that the mortgagee was without notice that the property mortgaged was partnership property in order to question the validity of the mortgage under the statute above mentioned. If the circumstances were deemed to be such as would operate by way of estoppel to prevent the assertion of a right to the property as against the mortgagee by the partner who did not sign the mortgage, or by the creditors, that would be defensive matter to be alleged and proved by the mortgagee. No such defense was alleged, nor would the evidence support it. On the contrary, we are of the opinion that the evidence is sufficient upon which it might have been found that the mortgagee was chargeable with notice of the actual situation as to the ownership of the property, had that matter been important and put in issue. That it was not deemed important or to be an issue in the case would appear from the fact that the defendant mortgagee did not testify as a witness, and no evidence was adduced, nor any instruction requested in relation to notice or knowledge on her part.

It is contended that the court erred in permitting an amendment to the petition after judgment to conform to the proofs. It appears that the cause came on for trial April 18, 1904, and was concluded on the following day, when the verdict of the jury was received and judgment rendered; that on April 29, 1904, a motion for new trial was filed by the defendants below, which was argued December 1, and decided December 27, 1904. The order overruling the motion recites that plaintiff by his counsel had filed an application to amend his amended petition so that it may conform to the proof made at the trial of the cause, and that "the court having considered said application does permit, authorize and direct the amendment as prayed by the insertion

or interlineation of the language : ''That the assets in plaintiff's hands were at the commencement of this action and are at the present time and have been during the period of his trust insufficient to pay all creditors,' the same to be inserted or interlined in the fourth paragraph of said petition, and to be resubscribed and resworn to, the court believing the same to be in furtherance of justice to parties concerned, to which order counsel for the defendant excepts.'' And thereupon the motion for new trial was overruled. The bill of exceptions recites that in open court at the time of the hearing of the motion for new trial the plaintiff made his motion for leave to amend his petition. But it appears also by the bill that the formal written motion was not actually filed with the clerk until December 28. The only proper inference from the record in this respect is that when the motion for new trial was being heard, and, when both counsel were in court, the plaintiff asked leave to make the amendment; that such leave was subsequently granted in open court, in the presence of counsel for both parties, immediately before overruling the motion for new trial; and that the motion was one which had already been acted upon, to the end that the record might more formally show the character of the application.

Afterwards, and on January 3, 1905, defendants moved to strike the motion filed December 28 from the files, and also the said amendment to the petition, on the ground that no notice of the making or hearing of the motion to amend was given to defendants or their counsel in writing or otherwise. Other grounds of the motion to vacate went to the merits of the motion or application for leave to make the amendment. The motion to vacate was heard and overruled March 22, 1905, to which ruling the defendants reserved an exception.

The first point urged in support of the proposition that error was committed in allowing the amendment is that no notice was given of the motion for leave to amend. It is sufficient answer to that to say that it does not appear that

the objection of want of notice was interposed when the motion was made and heard in open court in the presence of counsel, and during the hearing upon the motion for new trial. We must assume that, at the time the motion was so made, it was heard by the court and taken under advisement, without objection on the ground of want of notice. In a California case with reference to a similar objection the court said: "But, conceding that previous notice of the application should have been given, still we are unable to see that appellant was in any way prejudiced by the failure. He was present in court when the motion was made, and raised no such objection then. On the contrary, he proceeded to argue the question at length, and, when it was decided against him, took a general exception to the ruling. This was in effect a waiver of notice, and appellant cannot now be heard to complain of the action of the court on this ground." (Herman v. Santee, 103 Cal., 519; 37 Pac., 509. See also 14 Ency. Pl. & Pr., 127.)

In Kuhn v. McKay, 7 Wyo., 42, this court held that where an amendment might have been allowed to correspond with the facts proven, which would not have changed the cause of action, the judgment would not be disturbed because no formal amendment was made. The defendants, therefore, having submitted in open court to a hearing of the motion to amend, without objecting to the motion or hearing for want of notice cannot now be heard to object to the amendment on that ground. The fact that the motion was, after hearing, put in formal shape and filed does not, we think, alter the situation; since it does not appear that objection was made at the time that the motion was not in writing. It may indeed have been presented in written form though not filed until the motion was granted; and the order of December 27 treated it and referred to it as filed.

This brings us to the merits of the amendment. Was it error to allow it? It is clear that its allowance was based upon the provisions of Section 3588, Revised Statutes of 1899. That section reads as follows: "The court may, be-

fore or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved; and when an action or proceeding fails to conform to the provisions of this division, the court may permit the same to be made conformable thereto, by amendment. The party applying to amend during the trial shall be required to show that the amendatory facts were unknown to him prior to the application, unless in its discretion the court shall relieve him from so doing."

The general rule under such a statute is that amendments to conform to the proof should be liberally allowed, where justice will be thereby promoted. The case of Henry v. Jeans, 48 O. St., 443, cited by counsel for plaintiffs in error, does not discredit that rule, but adheres to it, although it is said in that case that the power to make new parties after judgment "will be sparingly exercised, and with a cautious discretion." It is well understood, however, that an amendment after judgment to conform a pleading to the proof will not in all cases be allowed. If allowed at all, the amendment should be in furtherance of justice, and the statute only permits such an amendment when it will not change substantially the claim or defense. It has been held improper to allow the amendment where the case was not tried upon the theory suggested by the amendment, or where it would enable the plaintiff to recover upon an utterly unconscionable demand, or where the admission of the evidence to which it is desired to conform the pleading was promptly objected to when it was offered, upon the ground that it did not tend to support the allegations in the pleadings. (1 Ency. Pl. & Pr., 584-586.) It has been held also that there is no warrant for allowing such an amendment to a pleading

which, without it, does not state a cause of action; and it is contended in the case at bar that the petition did not state sufficient facts to constitute a cause of action, in the absence of the allegation permitted by the amendment here questioned.

The amendment is not, in our opinion, subject to either of the objections above mentioned. The case was not tried upon a different theory. On the contrary, plaintiff's case was presented on the theory that the estate of the bankrupt, including the partnership property, was wholly inadequate for the satisfaction of the demands of the creditors; and the evidence, which was received without objection, clearly established the insufficiency of the assets in the trustee's hands, including the property covered by the mortgage, to pay the creditors. It is clear also that the amendment did not change the cause of action. Before the amendment the petition alleged the existence of the partnership between Lellman and Hackman; that the property administered upon by the plaintiff as trustee was the property of the partnership; that Lellman and the partnership were insolvent when the mortgage was given; that the property therein described was partnership property; and that Lellman unlawfully mortgaged it to the defendant Guild. It was also alleged that the acts of the defendants in the making of the mortgage prevented the plaintiff from equitably apportioning the property mortgaged towards the satisfaction of debts for which claims had been filed in the bankruptcy proceedings. The prayer of the petition was that the property covered by the mortgage be declared partnership property, and the mortgage be adjudged null and void. If it be conceded that it was necessary to allege and prove the insufficiency of the assets to pay the creditors, there was not such an entire absence of allegation in that respect as would render the petition incapable of supporting a judgment, as not stating a cause of action. The trouble with the petition in that regard was not that it did not state a cause of action, but that the statement was defective, to

cure which supposed defect the amendment was allowed to conform to the facts established on the trial by evidence which had been admitted without objection.

If the assets in the plaintiff's hands had been sufficient to pay creditors, then the mortgage might not have had the effect, as alleged, of preventing the equitable distribution of the mortgaged property among the creditors, because in that event, the property might not have been required for such purpose. The fact that the assets were insufficient having been shown without objection, it is evident that it would have been unreasonable to require a new trial because of the absence of a plain allegation to that effect in the petition. The trial court very properly found that the amendment to conform to the facts was in furtherance of justice, and we are satisfied that no error was committed in allowing it to be made.

On the trial of the cause the plaintiff below testified that as trustee of the bankrupt estate he took charge of the property belonging to it, including the property of the partnership of Lellman & Hackman at Diamondville, Wyoming, consisting of the hotel property, furniture in the hotel, books, papers, etc., and that he received all such property from the said Lellman. During the course of his examination as a witness, the plaintiff produced the hotel ledger, and was permitted to testify without objection as to certain entries found in the book, whereby it appeared that on the inside of the book was written "Ledger of Daly Hotel, Lellman & Hackman, Proprietors," and that it contained various entries of hotel accounts appearing by their dates to have been written during the years 1901 and 1902, and the witness testified that some of such entries were in the handwriting of Mr. Lellman, and others in the handwriting of Mr. Johnson, who had acted as the hotel clerk during that period. By the testimony of the witness it appeared that the accounts so found entered in the ledger were for board bills, and bills usually incurred at hotels. The witness also produced certain papers appearing to be state-

ments of account dated during the year 1902, made out in
the handwriting of Lellman, and marked paid in full over
his signature. Those statements appeared by their recitals
to contain a statement of the account of the debtors named
therein respectively with "The Daly Hotel, Lellman &
Hackman, Proprietors." In the same connection the witness
further produced four drafts, two of them appearing to
have been drawn by the same party, and the others by dif-
ferent parties, but all drawn upon Lellman & Hackman,
Diamondville, Wyoming, dated respectively January 19,
March 11, July 10, and November 15, 1901, each of which
was marked paid; the drafts having been found by the
trustee among the books and papers kept at the hotel. The
drafts were admitted in evidence over the objection of the
defendant, and an exception was reserved to the ruling;
and later a motion by defendants to strike them from the
evidence was denied, to which an exception was also re-
served. It is contended that prejudicial error was com-
mitted in the admission of the drafts. The drafts were
objected to on the ground that they did not tend to show
the existence of the partnership at the date of the mortgage,
that they did not show who paid them, though counsel ad-
mitted that one of them had been paid by Lellman; and
the motion to strike was made on the ground that they did
not tend to establish the point in controversy, or the fact
that the partnership existed, or that the parties were doing
business as such when the mortgage was given, and that
the acts of third parties, so far as they appear on the face
of the drafts, or by the endorsements thereon, cannot bind
the members of the partnership, and further that they were
in the nature of hearsay evidence, and therefore inadmis-
sible.

As the drafts do not on their face disclose whether the
debts thereby represented respectively were contracted be-
fore or after the date of the alleged dissolution, and there
was no evidence outside of the drafts themselves upon that
subject, it is clear that their payment would not be incon-

sistent with the claim that the firm had dissolved in January, 1901, and that Lellman then assumed the payment of all the firm debts contracted in the business at Diamondville. It may therefore be conceded that the drafts themselves, with the fact of their payment by Lellman, would not tend very strongly, if at all, to contradict the evidence afterward introduced on the part of the defendants to the effect that the firm had been previously dissolved. But there had been no evidence of a dissolution when the drafts were admitted, nor was any such claim then made by direct allegation of the pleadings. As disclosed by a remark of the trial judge in ruling upon the objection to one of the drafts, they were admitted for the purpose of proving that at a date prior to the giving of the mortgage a partnership existed. At the time the drafts were offered and admitted, and the rulings in reference thereto were made, the answer of the defendants consisted only of a general denial of all allegations of the petition. The petition had not then been amended, but it alleged that in the course of the administration of the bankrupt estate, one James Hackman, a member of the firm of Lellman & Hackman, a co-partnership composed of said Hackman and Lellman, the bankrupt, filed with the referee in bankruptcy consent and authority for the trustee to include in the administration of the bankrupt estate the property of said partnership, which was followed by allegations to the effect that the trustee was administering upon the property of that partnership, and that the property covered by the mortgage in question belonged to that partnership when it was executed, and that such mortgage was unlawfully executed by Lellman. The general denial put those facts in issue. The practical admission that a partnership had once existed, by the amended answer which alleged its dissolution in January, 1901, was not in the case when the drafts were admitted in evidence, nor when the motion was made to strike them from the evidence. That was filed subsequently, after the plaintiff had amended the petition by more specifically alleging the existence of the partnership

on the date of the mortgage. Thus, upon the issues as they stood at the time of the rulings in respect to the drafts, it was incumbent upon the plaintiff to show that the mortgage was given upon property belonging to the partnership of Lellman & Hackman. He was proceeding to establish that alleged fact by proof of the conduct of the parties, and particularly the acts of Lellman in the conduct of the business at Diamondville. Before the drafts objected to were offered, the plaintiff had introduced the written consent of Hackman, as a partner of Lellman, that the firm property should be administerd upon in the bankrupt proceeding, which consent appeared to have been signed October 6, 1902, and filed with the referee in bankruptcy on the same date. The objections interposed, to the drafts disclose a clear understanding of the issue in respect to the allegations of the partnership as then made up, for they were not made with express reference to, the effect of the drafts or their payment upon any supposed or alleged dissolution. The objection was that the drafts drawn upon the firm and paid by Lellman, and found among the effects in the hotel, did not tend to prove the existence of the partnership on December 14 following the date of the drafts, when the mortgage was executed. But they did tend to prove the fact of partnership on that date, and were clearly admissible for that purpose. The drafts were offered in connection with other evidence of the conduct of the business; all the drafts were dated in 1901, and the latest one within a month of the date of the mortgage. In proving a partnership between other parties on a certain date by their conduct the law does not confine a party to proof of acts on the exact date in question, but evidence tending to show a partnership at an earlier date, if not too remote, is always admissible, since a partnership shown to exist on a certain date will be presumed to have continued unless something to the contrary appears. (22 Ency. L., 49.)

"A partnership shown to exist is evidence of its existence at a later date under the usual *prima facie* presumption of

the continuance of a juridical relation or constancy of a condition of affairs, more or less strong according to the length of intervening time." (2 Bates on Part., Sec. 1159.) The drafts were, therefore, properly admitted. The same is true, and for the same reasons, respecting a bill rendered against the firm in July, 1901, by a Utah concern, which was marked paid, and was found among the other papers in Lellman's possession at the hotel.

Some other objections urged against the rulings of the court in the admission or rejection of evidence will be briefly noticed. Error is charged in the admission of the written consent of Hackman, the alleged co-partner of Lellman, that the trustee might include the partnership property in administering the bankrupt estate. The paper was admitted chiefly, we take it, to show the trustee's authority over the alleged partnership property, though, doubtless, it may have tended to discredit Hackman's testimony in support of the alleged dissolution in January, 1901. The objection interposed to its admission was the single one that it did not show when the partnership existed. That objection very clearly constituted no ground for its rejection. The paper recited that "James Hackman, a partner of Fred Lellman, the above named bankrupt," consents that the property owned or belonging to the firm of Lellman & Hackman, both real and personal, shall and may be administered in bankruptcy in the proceedings wherein Fred Lellman is bankrupt, and it was signed by said Hackman, and filed with the referee in bankruptcy. But we fail to see why the paper was not competent as against any objection for the purpose of establishing the right of the trustee to question the validity of the mortgage.

It is also contended that the court erred in sustaining an objection to certain questions propounded by counsel for defendants below to the referee in bankruptcy while testifying as a witness for plaintiff with reference to statements made to him by Hackman when he filed the written consent or subsequently. The referee had testified positively that

Hackman came to him voluntarily and offered to file such consent. The first question of that character inquired whether Hackman did not state to the witness that Lellman and himself had formerly been partners, but had dissolved their partnership, Lellman taking the Diamondville property and he, Hackman, taking the Evanston property. In connection with that question when objection was interposed, defendants' counsel stated that the purpose was to prove that the consent had been given involuntarily under the advice of the referee, and under the supposition that he, Hackman, would be afforded some protection by filing the consent; and that afterwards he informed the referee that he was not a partner of Lellman and had not been for some, but that if there were any partnership assets he was willing that they be taken by the firm creditors. The proposed testimony was excluded on the ground that subsequent statements of the co-partner were not competent to contradict the written consent filed by him. But no exception seems to have been reserved to the ruling in relation to the above question, and hence that particular ruling is not properly before us. However, immediately following the ruling upon that question, two other questions were put to the witness, to both of which objections were sustained, and exceptions reserved. One of those questions asked if Hackman did not at the time represent to the witness that he was willing that all the partnership assets of Lellman & Hackman, if any there were, might be subjected to the claims of the firm creditors; and the other was as follows: "You are unable to state then what Mr. Hackman did say at that time when he signed this instrument in your office or subsequently to that date?" No offers were made in connection with the last two questions as to proof proposed, but it is not perceived that an affirmative answer to the one referring to Hackman's willingness that the firm property, if any, be subjected to the claims of firm creditors would have been so beneficial to the defendants as to render its exclusion prejudicial error, even if erroneous, nor in what manner it would have discredited his written consent. And as to the

last question, the defendants were clearly not prejudiced by the ruling upon it, since, if the witness was unable to state what was said, it would have proven nothing. The consent would not in itself amount to proof as against the defendants below, that the property in question was partnership property; its only effect, if any, upon that question was whatever force the jury or court might concede to it as contradictory of Hackman's testimony, hereafter to be referred to.

It is claimed that error was committed in excluding testimony offered by defendants through the witness Charles Stone as to statements made to him by Hackman shortly after January, 1901, to the effect that the firm had dissolved. The sole question propounded to that witness which was objected to was whether Mr. Lellman had not made a statement to him as to who should pay the debts of the partnership incurred at Diamondville. It appears that, although an objection to the question was sustained, it had been answered before the objection was made, and the answer is in the record, and must have gone to the jury. The answer was, "I think it quite possible." The witness, moreover, without objection, in response to other questions, testified quite fully as to statements made to him by Lellman; and we fail to find in the record any exclusion of statements made to the witness by Hackman.

The admission in evidence of a chattel mortgage upon the property in controversy executed in 1899 by both Lellman and Hackman to the Blyth & Fargo Company of Evanston is also assigned as error. It was first offered and admitted before the amendment to the petition specifically alleging the existence of the partnership at the date of the mortgage to the defendant Guild, and, as appears by the record, immediately following its admission counsel for the defendants questioned whether the petition sufficiently alleged the partnership, and that resulted in the amendment aforesaid, and, after the amendment had been made, the mortgage was again offered in evidence and admitted without objection. The instrument was offered on each occasion as tending to show

the firm ownership of the property, and we think it was admissible for that purpose, but whether admissible or not, the defendants cannot complain since it was finally offered and received without objection.

The plaintiffs in error complain of an instruction given to the jury to the effect that, as to creditors or other persons dealing with it, notice of the dissolution of a partnership is necessary to terminate the agency of either partner, and that the burden of proof as to notice rested upon the partner claiming that it had been given. The particular objection here urged against the instruction is that it was misleading upon the issues and evidence for the reason that no question as to necessity of notice arose in the case. It is true that the evidence fails to disclose distinctly whether the claim of any creditor represented by the trustee was incurred after the date of the alleged dissolution. It does not neecssarily follow, however, that the instruction was so misleading as to require a reversal of the judgment, since it was confined as to necessity of notice to creditors dealing with the firm on the faith of the continuance of the partnership; and, in the absence of proof that any creditor occupied such a position, or if the proof established the existence of the claims of all the creditors prior to the date of the alleged dissolution, the instruction would not be applicable to any creditor in the case. In the latter event, the instruction might be deemed improper because inapplicable to any evidence before the jury, and in that sense perhaps misleading, but whether constituting prejudicial error or not might depend upon other considerations in view of all the evidence and the other instructions. But we do not think it incumbent upon this court to decide what its effect on error would be if given upon similar evidence in a case strictly at law. The case at bar is one of equitable cognizance, in which a jury was not demandable as a matter of right, and though one was called to try the issues of fact, the judgmnt was not entered *pro forma* upon the verdict, but it recites that the court adopted the verdict of the jury. Cases purely equitable in character are triable by the court, subject to its power to

order any issue to be tried by a jury. (Rev. Stat. 1899, Sec. 3605.) The verdict of a jury in such a case is merely advisory, and the court may adopt it or disregard it altogether, and proceed to make its own findings upon the evidence, and, whether the verdict be simply adopted by the court, or separate findings be made, either harmonizing or conflicting with the verdict, the ultimate conclusion will be that of the court, whose duty it is in all such cases to determine the questions of fact as well as of law. For these reasons it is generally, and we think correctly, held that misdirection of the jury is not in itself ground for reversal in such cases; and that is the prevailing rule whether, as in some jurisdictions, the case is heard upon appeal *de novo,* or, as in this state, upon error the same as in actions at law. Under either practice the findings and conclusions of the court rather than the verdict of the jury come before the appellate court for consideration and review. (Chosen Friends, &c., League v. Otterson, 7 Wyo., 89; Newark Plank Road Co. v. Elmer, 9 N. J. Eq., 754, 785; Black v. Lamb, 12 N. J. Eq., 108; Dowie v. Driscoll, 203 Ill., 480; Marshall v. Croom, 60 Ala., 121; Apland v. Pott (S. Dak.), 92 N. W., 19; Hendrickson v. Wallace (Mont.), 75 Pac., 355; Peck v. Farnham (Colo.), 49 Pac., 364; McClelland v. Bullis (Colo.), 81 Pac., 771; Sweetser v. Dobbins, 65 Cal., 529 (4 Pac., 540); Richardson Dry Goods Co. v. Hockaday (Okla.), 73 Pac., 957; Howard v. Carter (Kan.), 80 Pac., 61; Bank v. Alter (Neb.), 85 N. W., 300; Fisher v. Zuwalt, 128 Cal., 493.) The instructions in that class of cases, however, may be important as showing the theory upon which the cause was decided, and if it appears thereby that the conclusion of the trial court was based upon a misconception of the law as applied to the evidence or facts in the case, under the issues, that may constitute a sufficient ground for reversal, especially so under our practice, where the case comes up on error and not on appeal for hearing *de novo.*

If it should be conceded that the instruction aforesaid was erroneous because misleading or inapplicable to the

evidence or issues, we are not convinced that it discloses the adoption by the court of an incorrect theory in its disposition of the case. It appears, we think, not only by the instruction aforesaid, but also by the act of the court in refusing others requested by the plaintiff below, that the court fully undertood the extent and effect of the principle in regard to notice of the dissolution of a partnership. An instruction was refused which stated in substance that unless notice of the dissolution had been published or given the verdict should be for the plaintiff. It appeared by the evidence that public notice of the alleged dissolution had not been given, but the defendants were permitted to introduce evidence to the effect that some notice of the dissolution had been given by Lellman, and also by Hackman, to a few other persons, though no such notice was shown to have been given to anyone at Diamondville, or any person having dealings with the firm at that place, excepting perhaps the witness Charles Stone, a banker at Evanston, with whom the firm did some business. Such notice as was shown to have been given appears to have occurred in ordinary conversations, rather than as the result of any purpose to convey public information of the fact that the partners had agreed to dissolve. Indeed, we think it appears that whatever agreement the partners intended to make as to dissolution was purposely kept from the public, even if it be conceded that any such agreement was in fact made or talked over by them. The matter of notice was brought into the evidence by the defendants themselves for the purpose of corroborating the testimony of both Lellman and Hackman that they agreed to and did in fact dissolve partnership in January, 1901, and that thereupon, by virtue of their verbal agreement to that effect, the one took the Diamondville property and business, and the other the property and business at Evanston. We are not inclined to believe that even the jury were misled by the instruction into giving the absence of greater notice than that shown by the evidence more weight or effect than it was entitled to, but whether they may or may not have been misled, we are satisfied that the record fails

to disclose any such misconception by the court itself in its
adoption of the verdict of the jury.

It is contended that the evidence does not sustain the
verdict or judgment. We are of the opinion that there is
sufficient evidence to sustain both. It is not denied that
the parties had been partners, and unless they dissolved in
January, 1901, they continued in partnership, for there is
no evidence or allegation of any other dissolution.

Lellman and Hackman each testified that they verbally
agreed at Evanston to dissolve some time in January, 1901,
and there is some evidence to the effect that Lellman im-
mediately thereafter said to some parties whom he met on
business other than that of the firm that he and Hackman
had dissolved partnership, that he was to take the business
at Diamondville and pay the debts of that business; and
that afterwards he told Mr. Stone, the banker, about the
dissolution; and there is some conflict as to whether similar
information was given to Mr. Blyth, the holder of the prior
mortgage upon the hotel furniture. It also appears by the
evidence of the county clerk that Lellman made a state-
ment to him in March, 1901, that he was then running the
Diamondville business himself; that information having
been given in connection with an application by him for a
liquor license in his own name. Hackman testified that he
told some traveling men that the firm had dissolved, though
he admitted that he might have told Mr. Blyth that the
dissolution was not made public. As before suggested, no
notice to persons at Diamondville, or those having business
with them there, seems to have been given. By Hackman's
testimony on cross-examination it appears that the liquor
license at Evanston for the period between March, 1901,
and March, 1902, was issued in the firm name, though he
explained that by saying that he had filed the application
before the time of the alleged dissolution, and he did not
think it made any difference, as the county had the money,
so he made no effort to change the application to his own
name.

Opposed to the evidence above outlined are the facts that it does not appear that any accounting was had or attempted to be had between the parties at the time when it was claimed they dissolved or afterwards; no conveyances of the partnership property were made from either of them to the other, although some of the property at Diamondville was real estate; there was no apparent change of possession, and it appears that Lellman continued to use the firm name in the business under his charge, and to enter the accounts in the firm ledger without any entry showing a different ownership of the business. On March 9, 1901, Lellman sent a telegram to Mr. Blyth at Evanston stating that if Hackman did not pay the balance on a note held by him, which it appears was a firm note for furniture in the hotel at Diamondville, he, Lellman, would send a check on the fifteenth, though he had testified that, by the agreement of dissolution, he was to pay the firm debts contracted in relation to the Diamondville business. Hackman admitted on the witness stand that goods ordered by him for the Evanston business after January, 1901, the date of the alleged dissolution, may have occasionally been shipped in the firm name, which he explained by saying in effect that he did not think it necessary to mention the dissolution to every traveling man who took his orders.

The jury and court might also have regarded Hackman's written consent to the inclusion of partnership property in the bankrupt proceedings as discrediting his testimony. It further appeared, without objection, that at a previous hearing before the referee in bankruptcy, at which hearing both the partners testified, it had been found and so adjudicated by the referee that the property in controversy belonged to the partnership.

Some other evidence has been referred to in the discussion of other points and need not be here repeated. The court and jury had the witnesses before them, and were better qualified, therefore, than we can be to say what effect the positive testimony as to the dissolution should have in connection with the subsequent acts of the parties.

Or it may be that the trial court regarded the verbal arrangement between the parties in January, 1901, as a mere executory agreement to dissolve and divide the property, not afterward consummated. Mere dissolution without more will have no effect upon the ownership of the firm property. (Parsons on Part., 386.) And though an agreement between partners for a dissolution and a separation of the joint property may have the effect of altering the equitable ownership, if made *bona fide* and not fraudulent as against creditors, the agreement to have that effect must be executed and not executory merely. ·(Lindley on Part., 336, 337; 1 Bates on Part., Secs. 540, 541.)

It is evident that the conduct of the parties was not very consistent with the theory that they had dissolved partnership, or that the joint property had gone into the separate ownership of the individual partners. The court and jury having passed upon the evidence, we observe no reason for disturbing their conclusion upon it. The judgment will, therefore, be affirmed.                    *Affirmed.*

Scott, J., and Matson, District Judge, concur.

Mr. Justice Beard having announced his disqualification to sit in the cause, Hon. Roderick N. Matson, Judge of the First Judicial District, was called in to sit in his stead.