JOSEPH NOVICK *vs.* THE HOME INDEMNITY COMPANY, NEW YORK.

Suffolk.    October 6, 1948. — December 7, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & WILLIAMS, JJ.

*Insurance,* Burglary insurance.

Evidence warranted a finding that a theft of property from an inner compartment of a safe was within the coverage of a burglary insurance policy providing that it should cover a burglary accomplished by "felonious entry into such . . . [compartment] by actual force and violence of which force and violence there shall be visible marks made upon such . . . [compartment] by tools . . . while such . . . [compartment] is duly closed, and locked by . . . combination . . . lock."

CONTRACT. Writ in the Superior Court dated August 23, 1944.

The action was heard by *Pinanski,* J., without a jury.

*J. W. Blakeney,* for the defendant.

*W. F. Henneberry,* for the plaintiff.

WILLIAMS, J. This is an action of contract to recover for a loss alleged to have been covered by the terms of a policy of burglary insurance issued to the plaintiff by the defendant. It is agreed that the policy was in effect at the

time of the theft in question, that proof of loss was seasonably filed, and that the plaintiff was the insured under the policy. The judge in the Superior Court having found for the plaintiff, the defendant excepted to the denial of its requests for rulings and its motion that a finding be entered for the defendant. By the terms of the policy the defendant agreed: "I. To pay the assured for all loss by burglary of such property from within that part of any safe or vault to which the insurance under this policy applies, occasioned by any person or persons making felonious entry into such safe or vault by actual force and violence of which force and violence there shall be visible marks made upon such safe or vault by tools, explosives, electricity, gas or other chemicals, while such safe or vault is duly closed, and locked by at least one combination or time lock . . .." The policy contained a condition that: "C. The company shall not be liable . . . for loss of property from within any safe containing a chest or compartment of any description, unless both the safe and the chest or compartment shall have been entered in the manner specified in paragraph I . . .." "C" incorporated by reference the language used in "I" concerning force and violence and the visible marks resulting therefrom.

There was evidence from which the judge could find the following facts. During the night of December 1, 1943, the safe of the plaintiff located at his place of business in Boston was entered by thieves by the use of a torch and its contents stolen. Visible marks of force were apparent on the outer surface of the safe. Within the safe was an inner receptacle or compartment constructed of steel and equipped with a combination lock supplemented on the outside by a horizontal pressure bar across its door operated by a lever. On the morning after the theft the door of this inner compartment was found open, its contents missing, and the combination lock intact. In addition to marks on the front of the door which seem to have little relation to the opening of the compartment, the lever or handle which operated the pressure bar was bent and the screws or bolts which held the catch or lug into which the bar fitted when in posi-

tion had been extracted and were on the floor. There were small marks on the lever and on the door behind the bar itself.

From the somewhat confused description of the locking mechanism given by various witnesses, we conclude that the security of the inner compartment depended on its combination lock. The pressure bar was designed to force the door tightly shut so that the dial of the combination could be turned. To rotate the bar into a position where this result would be effected the lever was pushed back against the door. The bar by reason of the manner in which it fitted into its catch or lug became a form of locking device, but could be released or unlocked by a pull of the lever forward away from the door. It could have been found that, although this lever normally would respond to a pull by hand, force to get the bar out of its catch and away from the door in fact had been exerted on both the lever and the bar by the use of some tool in the nature of a jimmy. We need not consider whether the testimony as to the screws, presumably extracted with a screwdriver, constituted evidence of "marks" made by some tool.

There was evidence that the dial of the combination lock, if not fully turned to the left in the operation of locking, might be turned back to the right and the compartment then opened by one not familiar with the combination and that, although such a turn to the left would lock the compartment, it could be unlocked by the method described. An employee of the plaintiff testified that she locked the compartment by a full turn of the dial, but it could be found from her complete testimony that in fact she did not turn the dial sufficiently to disarrange the tumblers and that the dial could have been turned back and the compartment opened. To summarize, there was evidence that the inner compartment was locked by a combination lock, that there was a felonious entry, that it was effected by actual force and violence, and that marks of such force and violence made by a tool or tools were visible on the exterior of the compartment. See *Shulkin* v. *Travelers Indemnity Co.* 267 Mass. 160; *Shattuck & Jones, Inc.* v. *Travelers*

*Indemnity Co., ante,* 146.   The motion of the defendant was properly denied as were the requests which in different forms of language dealt with the same subject matter.

*Exceptions overruled.*