Seymour THICKMAN, William R. Knox, Appellants (Plaintiffs below),

and

Richard H. MacLean (Plaintiff below),

v.

W. F. SCHUNK, Appellee (Defendant below).

No. 3224.

Supreme Court of Wyoming.

May 8, 1964.

**940**

Redle, Yonkee & Redle and Lawrence A. Yonkee, Sheridan, for appellants.

Henry A. Burgess, Sheridan, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

In an action to dissolve a partnership, the trial court granted defendant's motion for a summary judgment sought because the pleadings, admissions, stipulations, and affidavits filed in the case showed no genuine issue as to any material fact and the movant was entitled to judgment as a matter of law; and this is an appeal therefrom.[1] Simultaneously defendant's counterclaim was dismissed since defendant had agreed that this might be done if his motion for summary judgment was granted.

According to the complaint, the three plaintiffs and the defendant were physicians and surgeons who on January 1, 1960, entered into a partnership agreement to continue until terminated as provided therein; on March 12, 1963, plaintiffs, being the other partners, gave defendant written notice of their election that the defendant retire from the partnership; defendant's physical condition prevented him from performing his part in the partnership and prejudicially affected the carrying on of the business; on February 11, 1963, demand was made by plaintiffs Thickman and Knox upon plaintiff MacLean and defendant for arbitration, which defendant refused; and

in view of constant disputes and inability to agree on matters of management and the lack of defendant's co-operation it was for the best interests of the parties that the partnership be dissolved. On the strength of these allegations, plaintiffs prayed termination and dissolution.

Defendant filed an answer, alleging that on January 31, 1963, each of the plaintiffs had withdrawn from and terminated his relationship with the partnership by giving the following notices in writing:

"TO WHOM IT MAY CONCERN:

"I would like to tender my resignation from the Schunk Clinic, to be effective on April 30, 1963, three months from today.

"Signed Richard H. MacLean, M.D."

"Dr. William F. Schunk
Schunk Clinic

"Be it known that as of today 31 January 1963, I intend to resign from the partnership of the Schunk Clinic to be effective 30 April 1963, in accordance with the contractual stipulations.

"Signed Seymour Thickman, M.D."

"To Doctors W. F. Schunk, Seymour Thickman and Richard MacLean Partners of the partnership under the name of Schunk Clinic,

"Under the terms of article No. 6 of the partnership agreement, I now submit this letter of resignation from this partnership. This resignation is submitted this 31st day of January 1963. The effective date of resignation would therefore be April 30, 1963.

"Respectfully yours,
"William R. Knox, M.D."

Defendant further alleged that by reason of such withdrawing he was entitled to continue the partnership business under the provisions of the partnership agreement,

---

1. The fact that only two of the three plaintiffs appealed will necessitate the use of either the word "plaintiffs" or "ap- pellants" hereafter as the occasion may require.

and asserted that the complaint failed to state a cause of action.

In their reply plaintiffs admitted that they gave notice of their intention to dissolve and withdraw from the partnership effective April 30, but stated that on February 16 Drs. Knox and Thickman rescinded their notices of resignation by delivery of the following:

"Dr. William F. Schunk
Dr. Richard H. MacLean
Dr. William R. Knox
c/o Schunk Clinic
Sheridan, Wyoming
"On January 31, 1963, I saw fit to give you a written notice of my intention to withdraw from the partnership known as the Schunk Clinic effective with the 30th day of April, 1963.
"I have reconsidered by action and hereby rescind said notice of intention to withdraw.
                    "Seymour Thickman"

"Dr. W. F. Schunk
Dr. Richard H. MacLean
Dr. Seymour Thickman
c/o Schunk Clinic
Sheridan, Wyoming
"On January 31, 1963, I saw fit to give you a written notice of my intention to withdraw from the partnership known as the Schunk Clinic effective with the 30th day of April, 1963.
"I have reconsidered my action and hereby rescind said notice of intention to withdraw.
                    "William R. Knox"

The Partnership Agreement contained the following provisions:

"2.

"TERM.  The partnership shall begin January 1, 1960, and shall continue until terminated as hereinafter provided."

"6.

"TERMINATION.  This partnership may be terminated by voluntary retirement, expulsion, or death, but however a partner terminates his interest in the partnership it shall have no effect upon the continuance of the partnership business and the remaining partners shall have the right to carry on the business using its assets, property, name, patient histories and medical records without bond.

"If a partner desires to retire or withdraw, he must give ninety days written notice of this intention to do so prior to the effective date thereof, which date shall be the last day of a calendar month.  However a partner's interest in the partnership is terminated the remaining partners shall purchase the interest of the partner who retires, is expelled, or dies, as such interest is determined by the partnership books on the last day of the month in which termination of a partner's interest occurs, by paying within ninety (90) days after the termination of his interest in this partnership a sum of money to him or to his estate equal in amount to his capital account, plus his share of the net profits or less his share of the losses, less any interest in the accounts receivable for which payment shall be made as hereinafter provided, the book value of the physical assets of the partnership, including the book value of the accounts receivable, shall at all times be conclusive and final upon all the parties hereto (without regard to how the partnership relationship is terminated).  In evaluating the interest of a partner hereunder no consideration shall be given to his interest in the accounts receivable, nor shall he have any interest therein if such partner is withdrawing or is expelled and engages in the practice of medicine in Sheridan County, Wyoming, within one year following his termination of interest in this partnership, provided, that if a partner's interest terminates because of his mental or physical disability or death, then this provision

shall not apply and in evaluating his partnership interest his share in the book value of the accounts receivable shall be included in his interest in the partnership. The accounts receivable shall be an asset of and remain in the physical possession of the clinic whether a partner withdraws, retires, is expelled, or dies.

"Payment of the interest in the accounts receivable of such partner retiring, being expelled, or dying shall be made in eight equal semi-annual payments bearing interest at six per cent per annum, and the payors shall have the right at any and all times to prepay any amount thereof without penalty as to interest. No payment shall be made or required to be made under this paragraph for a period of one year after the termination of the interest of a partner then living to insure performance of the provision that a partner withdrawing or retiring and engaging in a practice of medicine in Sheridan County, Wyoming, shall have no interest in the accounts receivable if he re-engages in practice in Sheridan County, Wyoming, within said one year period but if a partner's interest terminates because of death or disability the first payment shall be due six months after the date of termination. The obligation hereunder created to pay for such interest in the accounts receivable shall be a personal and individual obligation of each of the partners and shall be evidenced by a promissory note.

"No allowance for good will, trade name, practice or any intangible asset not on the books of the company shall be considered in evaluating the interest of a partner."

The cause boils down to a single crucial question, What was the effect of the separate January 31, 1963, resignations of plaintiffs from the partnership. If these written notices effected a dissolution as of the date upon which they were delivered, the only existence of the partnership at the time of the filing of the complaint was for the purpose of termination; the provisions of § 17–226, W.S.1957, allowing dissolution of partnerships by decree of court were inapplicable; and the tribunal was without jurisdiction. Under those circumstances, the summary judgment was proper. If on the other hand, plaintiffs' writings showing the intention to resign, and each on its face indicating the effective date as April 30, 1963, did not bring about dissolution, the partner giving the notice was entitled to withdraw it later either by an additional notice or by a suit under the statute.

■ It is argued on the authority of Dunnington v. First Atlantic Nat. Bank of Daytona Beach, 5 Cir., 195 F.2d 1017, that this case must be considered in the light most favorable to the parties bringing the appeal, and we think this principle is correct.

Appellants concede that on January 31, 1963, each plaintiff gave the notice of intention to resign from the partnership. It is somewhat unusual that in the notices plaintiffs employed "resign" and "resignation" since these words were not mentioned in the partnership agreement, are not contained in Wyoming's Uniform Partnership Act, §§ 17–195—17–237, W.S.1957, and are not found in any discussion by courts or authorities of partnership matters. As appellants indicate, this is perhaps immaterial since the notices explicitly relate to the partnership agreement and the words thus used might well be considered here as synonymous with the reference in that agreement to "retire" or "withdraw."

The key finding contained in the summary judgment was that the plaintiffs voluntarily elected to resign, were bound by such resignations, and could not invoke the jurisdiction of the court to set aside their voluntary actions under the agreement. Incidentally, it may be noted that the court in the judgment and counsel in discussion have frequently used the word "termination" too loosely since it actually means the point in time when all the partnership affairs are wound up. See § 17–224, W.S.

1957, and Commissioners' Note, 7 U.L.A. p. 165 at 166 (1949).

As to paragraph six of the partnership agreement under which Dr. Knox, purportedly, and the other doctors, apparently, acted at the time of writing the notices of resignation on January 31, appellants now argue that it was a special provision supplying a means to permit the affairs of the partnership to continue on uninterrupted if "a partner desires to retire or withdraw" and by no stretch of the imagination could be construed to cover circumstances such as the ones which developed. They present neither authorities nor convincing argument on this point and their contentions are merely self-serving statements. Accordingly, it is unnecessary to discuss the argument that in the absence of such a provision there was no method by which a partner might retire without causing a general dissolution of the firm.

Appellants refer to encyclopedic authorities concerning the lack of mutuality at the inception of an agreement, but these are not germane in a determination of the present controversy since the circumstances here related to an agreement already in existence and not to the inception of one.

It is asserted that for a notice to retire or withdraw to be effective it must be given to each partner individually, and Lindley, Partnership, p. 513 (11 ed.), is cited for the statement, "*As a general rule * * * notice should be given to each partner individually.*" (Emphasis supplied.) There is scarcely an occasion here to apply such a requirement on any basis, especially when it would be allowing appellants to take advantage of their own nonaction in serving the notice on the other plaintiffs. Appellants concede that the record is unclear as to whether the notices were spontaneous or according to a preconceived plan of action of the plaintiffs.

Appellants maintain also that each of the notices of intention to resign was without force because given less than the ninety days provided by the partnership agreement prior to the effective date, devoting some

attention to the system of counting days. Assuming for the purpose of discussion that each notice of intention was given less than ninety days before the noticing partner said the resignation was to be effective, we are given no persuasive argument and no authorities indicating that there was thus a fatal defect.

█ As a reason why the court had jurisdiction to dissolve the partnership, it is suggested that existing statutes at the time a contract is made become a part of the instrument. The statement is axiomatic, Baird v. School Dist. No. 25, Fremont County, 41 Wyo. 451, 287 P. 308, but is of little assistance here. Even though the agreement did not limit the right of a partner to petition for judicial determination of the relationship on the statutory grounds, it is elementary that if the partnership had already been dissolved the terms of the agreement as to dissolution would control and there would be nothing upon which a court decree could operate in this regard.

Criticism is voiced that the "final order entered herein implies an application of the doctrine of election of remedies, which cannot operate in these circumstances." No concrete suggestion is made as to any error or a solution of the claimed impropriety. Moreover, we find that the basic premise is misconceived and that by a fair interpretation the court did not imply any application of the doctrine.

█ Appellants urge that the judgment must be reversed because it requires a forfeiture. Such fact alone would not necessarily be a cause for reversal. Ray v. Electrical Products Consolidated, Wyo., 390 P.2d 607, 608–609; Brewster v. Lanyon Zinc Co., 8 Cir., 140 F. 801, 819. However, since this point was apparently not presented to the trial court, it may not be raised in the appeal. Rayburne v. Queen, 76 Wyo. 393, 303 P.2d 486, 306 P.2d 367; Strom v. Felton, 76 Wyo. 370, 302 P.2d 917, 924.

█ It is also contended that a suit to dissolve a partnership is a proceeding in

equity and that in equity a summary judgment is seldom if ever proper, citing Seaboard Surety Co. v. Racine Screw Co., 7 Cir., 203 F.2d 532. This is a serious misconception which warrants clarification. In this State the distinction between actions at law and suits in equity has been abolished, § 3–301, W.C.S.1945, Rules 1 and 2 (a), W.R.C.P. The Federal cases, with the exception of the one cited by counsel, have been definite that the type of objection here voiced is without merit. Typical of their holdings is the statement:

> "We find nothing in Rule 56 to support a conclusion that summary judgment is not available in actions which were formerly equitable actions. Rule 2 of the Federal Rules of Civil Procedure provides, 'There shall be one form of action to be known as "civil action".' Paragraph 56.02[1] Moore's Federal Practice, states, 'Rule 56 makes the procedure available in all actions that are subject to the Rules, and, in accordance with the mandate of Rule 2, whether formerly legal or equitable.' We are satisfied that Rule 56 authorizes a summary judgment in a proper case in an action formerly cognizable solely in equity." Booth v. Barber Transportation Co., 8 Cir., 256 F.2d 927, 931.

See also Moore v. Texas Reserve Life Insurance Company, W.D.Tex., 214 F.Supp. 925 (affirmed Texas Reserve Life Insurance Company v. Moore, 5 Cir., 314 F.2d 948), and the discussion in 3 Barron and Holtzoff, Federal Practice and Procedure, § 1232.3 (1958).

We advert then to the crucial question, What was the effect on the partnership of plaintiffs' notices followed by their attempted revocation? Appellants' principal thesis seems to be that the withdrawing partner by giving notice is merely making an offer to his co-partner, which must be accepted before it has any effect. Their text support for this position is Lindley, Partnership, p. 513 (11 ed.):

> "Articles of partnership frequently contain a clause to the effect that, in case a partner is desirous of retiring, he shall give so many months' notice to his co-partner, who shall have the option of purchasing the share of the retiring partner. If such a clause is acted on, and a partner notifies his desire to retire to his co-partner, and the latter declares his option to purchase the share of the retiring partner, a contract is thereby concluded between them, from which neither can depart without the consent of the other. Consequently the retiring partner cannot withdraw his notice and dissolve the partnership under some other clause in the deed. * * *"

Johnson v. Moreau, 323 Mass. 481, 82 N.E. 2d 802, is also cited, but this case is of little help since it dealt with a provision in the basic agreement that the co-partner "desiring to withdraw * * * shall first offer all his right, title and interest in the said partnership * * * to the other partner at a valuation to be determined by three disinterested parties * * *." The Massachusetts court specifically resolved the case by saying, 82 N.E.2d 803, "The notice * * * was subject to the provision setting up the mechanics for fixing the amount of an offer which the partner desiring to withdraw was required 'first' to make to the other partner, who was under no requirement to accept it."

On the other hand, defendant insists that such a notice could be prospective and that once given it cannot be withdrawn without consent, ignoring any reference to the statement that it is to be effective three months later. There is admittedly some authority for his position, but it is not direct and grows out of cases dealing with facts different from those before us. He refers to Lindley, Partnership, p. 676 (11 ed.), "A notice that the partnership shall be dissolved must, to be effectual, be explicit, and be communicated to all the partners. The notice may be prospective." We do not

understand that this latter point is questioned here by the appellants. Defendant also quotes from the same authority at 677, "A notice once given cannot be withdrawn without consent," which statement cites Jones v. Lloyd, 18 Eq. 265, and for the purpose of comparison, Finch v. Oake [1896], 1 Ch. 409, and Glossop v. Glossop [1907], 2 Ch. 370. The Jones case is of slight assistance here since it related to an attempt to withdraw a notice of intention to dissolve a partnership at a day later than that of the notice, but the notice grew out of the powers of partnership which specifically provided that the partnership should be determined from the time when such notice should be given or left. The holding of the court that the notice could not be withdrawn without the consent of the other partner is therefore not germane to the present controversy. The Finch case dealt with a voluntary association, rather than a partnership, to which a member sent a letter stating that he wished to retire. The court held that he at once ceased to be a member and could not again become one without re-election. The court in the Glossop case held that a managing director of a limited liability company could not withdraw his resignation without the consent of the company, but there again the reason for the holding was the provision in the articles of association that the office of the managing director "shall be vacated" on the happening of certain contingencies, including "If by notice in writing to the company he resigns his office." None of the three cases can properly be said to be precedent for anything that might be done in the present case.

■■ The propriety of the trial court's issuing the summary judgment depends upon an interpretation of paragraph six of the Partnership Agreement in the light of § 17–225(1) (b), W.S.1957:[2]

"Dissolution is caused:

"(1) Without violation of the agreement between the partners,

\*　　\*　　\*　　\*　　\*　　\*

"(b) By the express will of any partner when no definite term or particular undertaking is specified."

Paragraph six of the partnership agreement stated, "the remaining partners shall purchase the interest of the partner who retires," but this must be interpreted in pari materia with the remainder of the agreement and particularly the preceding sentence that "the remaining partners shall have the right to carry on the business." This can scarcely mean other than that the remaining partner has an option to carry on but is not obligated so to do. Consequently, before the stated date of April 30 no effect could come from the notices of intention to withdraw unless defendant exercised his right to carry on the business. There was no evidence that defendant notified plaintiffs of a desire to exercise the right to carry on the business and since this was not done either prior to appellants' attempted recisions or the filing of the complaint, the relationship was not such that the invoking of the jurisdiction of the court to act was improper.

The court having wrongfully conceived the law applicable, the cause must be remanded with direction that the erroneous summary judgment granted appellee be vacated and set aside and that further proceedings be had consistent with this opinion.

Reversed and remanded with direction.

2. The corresponding section of the English Partnership Act of 1890 provides: "[§ 32] Subject to any agreement between the partners, a partnership is dissolved — \* \* \* (c) If entered into for an undefined time, by any partner giving notice to the other or others of his intention to dissolve the partnership. In the last-mentioned case the partnership is dissolved as from the date mentioned in the notice as the date of dissolution, or, if no date is so mentioned, as from the date of the communication of the notice." 7 U.L.A. p. 259 (1949).