HYATT BROTHERS, INC., ex rel., Dorothy C. HYATT, a shareholder; Dorothy C. Hyatt, as a shareholder and individually; and Medicine Lodge Livestock Corp., Appellants (Plaintiffs),

v.

S. Wesley HYATT, as a director, officer and shareholder in Hyatt Brothers, Inc., and individually; Margaret F. Hyatt, as director and shareholder in Hyatt Brothers, Inc., and individually; P. Milton Hyatt, as a director, officer and shareholder in Hyatt Brothers, Inc., and individually; Loretta D. Hyatt, as a director and shareholder in Hyatt Brothers, Inc., and individually; Wesmar Ranch, Inc.; and Hyatt Brothers, Inc., Appellees (Defendants).

No. 88–74.

Supreme Court of Wyoming.

Feb. 3, 1989.

Steven F. Freudenthal of Freudenthal, Salzburg, Bonds & Rideout, P.C., Cheyenne, John P. Worrall, Davis, Donnell, Worrall & Bancroft, P.C., Worland, for appellants.

Henry A. Burgess and Darlene L. Reiter of Burgess & Davis, Sheridan, for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

We hold that the trial court erred in striking appellants' demand for jury trial under W.R.C.P. 38(b)(1), in an action for the recovery of money allegedly wrongfully diverted from a close corporation and from one of the minority shareholders of the corporation and for other relief.

We remand the case for jury trial. In light of our remand, we need not answer the other questions raised since the mat-

ters to which they relate will be decided on retrial.

## PARTIES

The appellants are:

1. Hyatt Brothers, Inc., a close corporation, on the relation of Dorothy C. Hyatt, a minority shareholder (HBI);

2. Dorothy C. Hyatt, individually and as a shareholder (415 shares) (Dorothy);

3. Medicine Lodge Livestock Corporation, a corporation wholly owned by Dorothy (Medicine Lodge).

The appellees are:

1. S. Wesley Hyatt, individually and as a shareholder (400 shares), a director and an officer of HBI (Wesley);

2. Margaret F. Hyatt, Wesley's wife, individually and as a shareholder (15 shares) and a director of HBI (Margaret);

3. P. Milton Hyatt, Wesley's brother, individually and as a shareholder (400 shares), a director, and an officer of HBI (Milton);

4. Loretta D. Hyatt, Milton's wife, individually and as a shareholder (15 shares) and a director of HBI (Loretta);

5. Wesmar Ranch, Inc., a corporation largely owned by Wesley and Margaret (Wesmar); and

6. HBI, the previously mentioned close corporation.

## FACTS

Milton, Wesley, and Gilbert Eugene Hyatt (Eugene), brothers, were born and raised on the Hyatt family home ranch on Paint Rock Creek in Big Horn County, Wyoming. Their father, Samuel C. Hyatt, took them into the ranch operations as they grew up. In 1948, while attending college, Eugene married Dorothy. Graduating from college, Eugene returned to the family ranch with Dorothy and resumed the ranch operation with his father and two brothers. In 1956, the three brothers formed a partnership and purchased their father's ranch operation. In 1963, the brothers incorporated their partnership to form HBI. Each brother owned 415 shares of HBI stock. From 1963 to 1968, the three brothers shared equally the operational responsibilities of HBI, with Milton responsible for cattle, Wesley responsible for sheep, and Eugene responsible for the ranching and farming. HBI's ranching operation also included the separate ranches which each brother individually owned. During this time period the brothers drew no salaries. At monthly meetings the brothers would present all their bills, post them in "the black book," charge each brother's bills to each brother's account in the book, and have HBI pay all the bills. At the end of the year, the brothers tabulated and settled the accounts and shared equally any profit made.

In January, 1968, Eugene died. As a result of discussions with Milton and Wesley, Dorothy indicated to them she wanted to stay at the ranch. All of them wanted the ranch operation to continue. Milton and Wesley told Dorothy they would look after her interests in the ranch as well as their own. From September 1968, to August 1970, Dorothy commuted to Northwest Community College in Powell, Wyoming, to attend classes. From fall 1970, to fall 1972, she attended classes at the University of Wyoming. From fall 1972, to January 1973, she was a student teacher at a school in Powell. From January 1973, to August 1975, she had an internship through the University of Wyoming. She worked in Rock Springs from fall 1975, to early 1976. Then she returned to Laramie and lived there until September 1977. She spent a month in Norway and then returned to live with her son and his wife at Medicine Lodge on the ranch. During this period from 1969 through 1977, Dorothy only occasionally visited the ranch and had little involvement in the ranch operation. She has lived at the ranch from late 1977 or early 1978 to the present time.

As a result of their brother Eugene's death in 1968, Milton and Wesley made changes in the operation of the ranch, including:

1. In 1968, they began paying themselves salaries in addition to charging expenses for the "meals and lodging" account.

2. Beginning in 1969, they had HBI enter into identical separate written lease agreements with Milton, Wesley, and Dorothy under the terms of which HBI, as lessee, leased from each lessor all of the lessors' lands and livestock. From the sale of each lessor's cattle and sheep, identified as "saleable crop," HBI as lessee kept sixty percent of the gross income and the lessors received forty percent. With reference to the further division of HBI's sixty percent share of the gross income, Milton and Wesley devised a division formula based upon each lessor's percentage allocation under federal grazing permits to use lands of the Big Horn National Forest. Neither Milton nor Wesley told Dorothy about this formula and Dorothy claimed no one told her about it.

3. They gave to themselves "wage credits" that were subtracted from their personal expense totals tabulated at each year's end. A "wage credit," also called a "convenience to the employer" item under § 119, Internal Revenue Code, represented a sum of money paid to a corporate officer to defray costs of rent, utilities, gas, and the like incurred by the corporate officer required to be on corporate premises by the corporation. The "wage credits" received by Milton and Wesley from HBI were in addition to their salaries.

4. The two brothers allegedly:

   a. used HBI property and employees in the operation of their separate hunting operation and dude ranch operation.

   b. without Dorothy's consent, leased and then sold certain Bureau of Land Management grazing rights belonging to her.

   c. wrongfully induced Dorothy to convey her interest in certain real property to a grantee corporation owned in part by them.

   d. failed to return to Dorothy her cattle and money to which she believed she was entitled after her lease with HBI was terminated.

   e. accumulated and kept for themselves in the form of certificates of deposit large sums of money derived from HBI's ranching operations.

## PLEADINGS

In their original and amended complaints, appellants demanded a jury trial under W.R.C.P. 38(b)(1). As finally framed in the second amended complaint, the essential nature of the allegations to be tried by a jury and the relief sought by appellants were as follows:

Count 1: Milton and his wife and Wesley and his wife managed HBI's affairs in derogation of HBI's interest and diverted to their own benefit HBI's and shareholders' profits and funds in excess of $210,000 and cash in the amount of $124,000. Appellants sought recovery of this money.

Count 2: Appellees breached an agreement dated March 1, 1970, among all HBI shareholders which provided, among other things, that if a shareholder decided to sell his or her individual property which was included in HBI's ranch operation, then he or she would first offer the property to the remaining shareholders on terms specified in the agreements. Appellants sought sale of HBI without offering Dorothy the right to purchase HBI at the highest bid.

Count 3: Milton and Wesley retained for their personal benefit all profits resulting from a lease of Grey Bluffs Ranch to third parties; that ranch included HBI's 201 animal unit months and Milton and Wesley sold those 201 animal unit months and retained the proceeds in derogation of HBI's and Dorothy's ownership interest in them. Appellants sought payment to Dorothy and her corporation of lease profits and sales proceeds.

Count 4: Milton and Wesley fraudulently caused Dorothy to convey to one of their corporations a one-fifth undivided interest in a 280-acre ranch in return for which she received nothing. She sought the return of the property to her.

Count 5: Milton and Wesley caused HBI, as lessee, to terminate its lease with Dorothy and Medicine Lodge, as lessors, af-

ter which Wesley and Milton wrongfully retained cattle owned by Dorothy and Medicine Lodge. She sought payment for these cattle.

Count 6: Milton and Wesley caused HBI, in conjunction with themselves and Wesmar, as lessors, to enter into a management agreement or lease with third parties, as lessees, under the terms of which Milton, Wesley, and Wesmar are receiving disproportionate economic benefits to the detriment of HBI and Dorothy. Appellants sought cancellation or revision of the management agreement or lease to fairly compensate HBI.

In addition to the above-described relief sought, appellants also asked for a court-appointed receiver to render an accounting of HBI affairs from January 1, 1968, to the present; punitive damages; costs and attorney fees; a permanent injunction enjoining Milton and Wesley and their spouses from interfering with Dorothy and her corporation's property rights and interests. Appellees answered generally denying the allegations. They also moved to strike appellants' jury demand on the grounds that the relief sought was primarily equitable in character.

## DENIAL OF JURY TRIAL

In striking appellants' jury demand, on appellees' motion, the trial court determined that appellants' claims were equitable, not legal, in nature; therefore, a right to a jury trial on those issues did not exist. The trial court identified counts 1, 3, 5, and 6 of the second amended complaint as stockholder's derivative counts which were historically equitable in nature. Relying on *Pelfrey v. Bank of Greer*, 270 S.C. 691, 244 S.E.2d 315 (1978), the trial court found no right to a jury trial in a stockholder derivative action. Additionally, the trial court believed that appellants were generally asserting that Wesley and Milton, as HBI directors, had violated fiduciary duties and appellants were seeking an accounting, which was equitable in nature especially where the resolution of factual issues required close examination and reconstruction of complicated accounts. The trial court identified count 4 of the second amended complaint as also seeking an accounting and cancellation of Dorothy's deed of conveyance relating to her undivided one-fifth interest in a 280-acre ranch. The trial court relied on *Davidek v. Wyoming Investment Company*, 77 Wyo. 141, 308 P.2d 941, 946 (1957), for the rule that a suit to cancel, set aside, or reform an instrument is equitable in nature and no right to jury trial exists in such a matter. Id. Finally, the trial court identified count 2 of the second amended complaint, relating to the defendant's alleged breach of the shareholder's agreement, as seeking specific performance of the agreement for which no right to jury trial exists under *Goodson v. Smith*, 69 Wyo. 439, 243 P.2d 163, 175 (1952).

The right to a jury trial in civil actions arises out of Wyo. Const. art. 1, § 9 [1] and W.R.C.P. 38. [2] Our most recent case determining whether a jury trial should have been granted in a case involving both equitable and legal issues was *Ferguson v. Ferguson*, 739 P.2d 754, 758–59 (Wyo. 1987). In *Ferguson*, the plaintiff brought an action for the partition of real property. The defendant answered the partition ac-

1. Wyo. Const. art. 1, § 9, provides in pertinent part:

   The right to trial by jury shall remain inviolate in criminal cases, but a jury in civil cases in all courts or in criminal cases in courts not of record, may consist of twelve men, as may be prescribed by law * * *.

2. W.R.C.P. 38(a) provides:

   Issues of law must be tried by the court, unless referred as hereinafter provided; and issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury unless a jury trial be waived, or a reference be or-dered. All other issues of fact shall be tried by the court, subject to its power to order any issue tried by jury, or referred.

   As we analyze the problem before us, we are mindful that by adoption of the Wyoming Rules of Civil Procedure "the distinction between actions at law and suits in equity has been abolished." W.R.C.P. 2. See *Thickman v. Schunk*, 391 P.2d 939, 944 (Wyo.1964). One result of this abolition was seen in *Thickman* in which this court approved the use of summary judgment in a suit to dissolve a partnership, an action historically equitable in nature.

tion and counterclaimed alleging affirmative defenses of estoppel, unjust enrichment, and breach of an oral contract. He asked for specific performance of an oral contract and requested a jury trial on the issues set out in the counterclaim. The trial court granted a partial summary judgment on one of the issues in defendant's counterclaim and struck the jury demand on the rest finding them to be primarily equitable in nature. *Id.* at 756.

■ In affirming the trial court's action in striking the defendant/counterclaimant's jury demand we first noted that, under W.R.C.P. 38, *purely* equitable actions remained triable by the trial court unless it ordered an issue tried to a jury. *Ferguson,* 739 P.2d at 756 (quoting from *True v. Hi–Plains Elevator Machinery, Inc.,* 577 P.2d 991, 1003 (Wyo.1978)). See also *Hein v. Lee,* 549 P.2d 286, 290 (Wyo.1976); and *Lellman v. Mills,* 15 Wyo. 149, 87 P. 985 (1906). We then held that the right to a jury trial in cases involving mixed issues of law and equity would be resolved by examining the entire pleadings and all the issues raised to determine whether the action is *primarily legal in nature* or *primarily equitable in nature. Ferguson,* 739 P.2d at 758 (citing *Davidek v. Wyoming Investment Company,* 77 Wyo. 141, 308 P.2d 941, 946 (1957)). This test requires that we take a hard look at the substance of the issues raised and rather than blindly swallowing one party's characterization of them as inherently or historically equitable. Cf. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 476–477, 82 S.Ct. 894, 899, 8 L.Ed.2d 44, 50 (1962). Under our test, when mixed issues of law and equity are present, the right to a civil jury trial under W.R.C.P. 38 does not turn on the presence of a single issue that can be styled as historically equitable; instead, it turns on the primary nature of the action considered in its entirety.

### Stockholders' Derivative Actions and Accountings

The propriety of allowing a jury trial in a stockholders' derivative action has received varying treatment in federal and state courts since law and equity have been merged. See F.R.C.P. 2. In *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), a stockholders' derivative action in federal court against the directors of their closed-end investment company and the company's brokers, the stockholders accused the directors of converting corporate assets, gross abuse of trust, gross misconduct, willful misfeasance, bad faith, gross negligence, breaches of fiduciary duty, and breach of contract. The relief sought was money damages. The Court held that the Seventh Amendment, which preserves the right of jury trial in common law suits where the value in dispute exceeds twenty dollars, guarantees the right to a jury trial in stockholders' derivative actions.[3] The Court reviewed the historical rule, which on the one hand refused to permit stockholders to call corporate managers to account in actions at law although the corporation's suit to enforce a legal right was an action at law, and which on the other hand, allowed stockholders by way of a derivative suit in equity to enforce the corporate cause of action against corporate managers. Recognizing the impact of the Federal Rules of Civil Procedure under which only one action—a "civil action"—now exists in which all claims may be joined and all remedies are available, the Court found the historical rule to be obsolete. See F.R.C.P. 2. The Court said:

> After adoption of the rules there is no longer any procedural obstacle to the assertion of legal rights before juries, however the party may have acquired standing to assert those rights. Given the availability in a derivative action of both legal and equitable remedies, we think the Seventh Amendment preserves to the parties in a stockholder's suit the same right to a jury trial that historically belonged to the corporation and to those against whom the corporation pressed its legal claims.

396 U.S. at 542, 90 S.Ct. at 740, 24 L.Ed.2d at 738.

---

**3.** A state is not bound to follow this federal precedent. *Minneapolis & St. Louis Railroad Company v. Bombolis,* 241 U.S. 211, 217, 36 S.Ct. 595, 596–97, 60 L.Ed. 961, 963 (1916).

The *Ross* Court found support in *Dairy Queen; Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); and *DePinto v. Provident Security Life Ins. Co.,* 323 F.2d 826 (9th Cir.1963), cert. denied sub nom. *Gorsuch v. DePinto,* 376 U.S. 950, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964).

In *Dairy Queen,* a dispute between the owner of a trademark and the licensee under a written licensing contract in which the owner sought an injunction and an accounting for profits for trademark misuse, the Court held that a jury trial was required even though both the accounting for profits and the injunction were equitable remedies in a historical sense. Noting that the right to trial by jury does not depend upon the choice of words used in the pleadings, the Court viewed the complaint as presenting a claim for a money judgment which is wholly legal in nature. Dismissing the assertion that the accounts between the parties were of such a complicated nature that only a court of equity could unravel them, the Court said, "the legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records." 369 U.S. at 478–79, 82 S.Ct. at 900, 8 L.Ed.2d at 52.

In *Beacon,* a dispute between competing theatre operators concerning threatened anti-trust claims relating to valuable first-run contracts with movie distributors, one operator sued to enjoin the other from suing under the anti-trust laws and to obtain a declaration that the plaintiff's operations were legal. The defendant operator counterclaimed alleging anti-trust violations and seeking treble damages. The Court held that where both legal and equitable issues are presented in a single case, "only under the most imperative circumstances * * * can the right to a jury trial of legal issues be lost through prior determination of equitable claims." 359 U.S. at 510–11, 79 S.Ct. at 957, 3 L.Ed.2d at 997–98.

In *DePinto,* the stockholder's theory of suit was that corporate assets had been diverted by corporate managers' fraud, negligence and breach of fiduciary duty, unjust enrichment, and conversion. The relief sought was money damages. Holding that the corporate managers were entitled to a jury trial in this derivative action, the court explored the nature of a director's fiduciary duty. A director is required to discharge his duty with good faith, exercise diligent care and skill, devote reasonable attention to the corporate affairs, take reasonable precautions against neglect and fraud, supervise corporate affairs, and attend to the business of the company. The Court held that:

> [W]here a claim of breach of fiduciary duty is predicated upon underlying conduct, such as negligence, which is actionable in a direct suit at common law, the issue of whether there has been such a breach is, subject to appropriate instructions, a jury question.

323 F.2d at 837.

Considered together, *Dairy Queen, Beacon,* and *DePinto* present a remedy approach to the question whether a jury trial is required where both legal and equitable issues arise in a case. D. Dobbs, *Remedies,* at 69–70 (1973). As Professor Dobbs observes:

> In general, this approach treats as equitable *only* those questions involving an *in personam* order (such as an injunction). All money remedies and the declaratory judgment are treated as legal, even if, *historically,* equity courts had jurisdiction over the particular kind of claim. If both legal relief (declaratory judgment, for example) and equitable relief (injunction) are involved, the jury decides the facts involved in the legal matter, and the judge then may add such equitable relief as may be consistent with the jury's determination.

Id. at 70 (some emphasis added). Cf. *Pelfry,* 244 S.E.2d at 316–17 (relying on *Ross,* 396 U.S. at 545, 90 S.Ct. at 741, 24 L.Ed.2d at 740 (Stewart, J., dissenting) (where Justice Stewart explained that *historically* a stockholders' derivative action has been treated as an equitable action).

▮ A similar approach can be applied to stockholders' derivative actions in which the plaintiff requests an accounting.

There certainly will be suits in which a shareholder who qualifies under W.S. 17–1–141.1 (June 1987 Repl.) and W.R.C.P. 23.1 will assert a purely equitable claim for the benefit of the corporation against the directors and officers of the corporation to render an accounting for their handling of corporate funds. See H. McClintock, Handbook On the Principles of Equity, § 201 at 539 (1948). When that type of claim is intermingled with numerous other contract based claims for damages, or is requested as an alternative form of relief to other legal claims, *Ferguson* allows the trial court to look to the substance of those claims and to balance that substance in the context of the pleadings and determine the primary nature of the claims containing the request for an accounting and the lawsuit as a whole.

Of interest in this regard is the holding in *Fedoryszyn v. Weiss*, 62 Misc.2d 889, 310 N.Y.2d 55, 59 (1970), a stockholders' derivative action, in which the court held, "[w]hether the cause of action * * * is described in fraud, misappropriation, conversion, money had and received, etc., the fact remains that the sole relief demanded is a judgment for a sum of money." The plaintiffs' reference in the pleading "that a defendant be made to 'account' adds nothing to the basic nature of his complaint. It is not an action in accounting and he seeks no relief which a court of equity alone may grant." Id. 310 N.Y.S.2d at 59–60. See also *Dairy Queen*, 469 U.S. at 477–79, 82 S.Ct. at 899–900, 8 L.Ed.2d at 50–51.

We conclude that this approach to determining the substance of a stockholders' derivative action, or a stockholder's derivative action that seeks an accounting, in terms of the right to a civil jury trial is consistent with our holding in *Ferguson* that we look for the *primary nature* of the issues at hand. In Wyoming, for purposes of determining whether a party has a right to a jury trial, stockholders' derivative actions, even if they include a request for an accounting, are not automatically considered actions purely in equity. Rather, the substance of the issues underlying the derivative action, as evidenced by the entire pleadings, will control the court's characterization of the derivative action as primarily legal or equitable in nature.

This leaves us with the task of examining the six counts in the amended complaint, along with the other pleadings, to discern whether they raised issues sufficiently equitable in character to indicate that appellants' lawsuit was primarily equitable in nature and not susceptible to a jury trial. It is clear, under the above reasoning, that counts 1, 3, 5, and 6 are not necessarily equitable by virtue of being stockholders' derivative actions. In our view, in counts 1, 3, 4, and 5 of the second amended complaint, appellants are substantially seeking the recovery of money or property. Count 2 alleges breach of contract and requests specific performance, an equitable remedy, or money damages. In their memorandum opposing appellees' motion to strike their jury demand, appellants admit that by seeking voidance or revision of the management agreement with third parties, count 6 presents an equitable claim. Appellants also admit that certain aspects of all six counts *might* be triable to the trial court in equity. Among these are the issue in count 6 whether the percentage division of proceeds from operation of the ranch that was based on each lessors' allocation of federal grazing lands under Forest Service permits was a fair lease term intended to be detrimental to the benefit of the minority shareholders. Further, miscellaneous aspects of counts 1, 5, and 6, some of which are requested in the alternative, concerning alleged breach of fiduciary duties and fraudulent conduct by appellees as officers, directors, and shareholders in the corporation, and the request for an injunction, are equitable. Somewhere within all of these issues, considered together in light of the entire pleadings, lies the primary nature of this action.

Having examined the six counts in the context of the entire pleadings and all the issues raised and having identified and considered the nature of the remedies sought by appellants, we conclude that appellants' action is primarily legal in nature, and, thus, one in which a jury trial must be granted. Appellees did raise issues and

make requests for certain kinds of equitable relief; those issues and requests, however, appear secondary to the primary claims seeking money damages under legal theories. We hold that under the standard set out in *Ferguson*, and described above, the totality of the pleadings, issues, and remedies show the substance of appellants' action to be primarily legal in nature.

REMANDED FOR JURY TRIAL.