BARNHART DRILLING CO., INC., Appellant (Defendant/Third Party Plaintiff),

v.

PETROLEUM FINANCING, INC., a Texas corporation; and The Clarke Partnership, a Texas general partnership, Appellees (Plaintiffs),

and

Devane Clarke, Appellee (Third Party Defendant).

No. 90–100.

Supreme Court of Wyoming.

March 12, 1991.

Glenn E. Smith, Glenn E. Smith & Associates, Cheyenne, and Joel M. Vincent, Vincent and Vincent, Riverton, for appellant.

Jerry A. Yaap, Bishop, Bishop & Yaap, Casper, for appellees.

Before URBIGKIT, C.J., THOMAS, CARDINE and GOLDEN, JJ., and TAYLOR, District Judge.

URBIGKIT, Chief Justice.

This appeal addresses a simple issue of mortgage and judgment lien priorities sandwiched within a complex oil well drilling cost and lending controversy. The trial court ruled in favor of the mortgage holder over the later filing of a judgment lien creditor, which decision we affirm.

## I. ISSUES

Appellant, Barnhart Drilling Co., Inc., asks:

A. Did the district court err in finding that fair consideration existed to support the mortgage deed given by Andrau [promoter] to PFI [Petroleum Financing, Inc.] and the Clarke Partnership [jointly designated mortgagees—appellees] on the Madden Deep Unit property?

B. Was the trial court's decision that fair consideration, as the term is used in § 105 of the Uniform Fraudulent Conveyance Act, existed to support the mortgage delivered by Andrau to PFI and the Clarke Partnership contrary to the weight of the evidence?

C. Did the district court err in finding that Andrau's delivery of the mortgage to PFI and the Clarke Partnership was not made with actual intent to delay, hinder or defraud a creditor within the meaning of § 108 of the Uniform Fraudulent Conveyance Act in light of this court's decision in In Re: Estate of Reed?

D. Did the district court err in denying Barnhart [Barnhart Drilling Co., Inc.—appellant] a jury trial on his legal claims against PFI, the Clarke Partnership, Andrau and Clarke?

Appellees, Petroleum Financing, Inc., The Clarke Partnership and Devane Clarke, restate:

A. The specific findings of the trial court are neither clearly erroneous nor against the great weight of the evidence and are supported by substantial evidence.

1. The trial court's finding that fair consideration existed to support the mortgage deed given by Andrau to PFI and TCP [The Clarke Partnership] is supported by substantial evidence. * * *

   a. Appellant's cases distinguished—creditor v. creditor.

   b. A debtor has an absolute right to prefer one creditor over another.

   c. Appellant's conflicting testimony should not be considered.

2. The trial court's finding that Andrau's delivery of the mortgage to PFI and TCP was not made with actual intent to delay, hinder, or defraud a creditor is supported by substantial evidence. * * *

B. The trial court did not err in ruling that no right to trial by jury exists in this case.

C. There is no reasonable cause for appeal as required by W.R.A.P. 10.05.[1]

## II. FACTS

William E. Andrau, under one or more names, promoted variant oil drilling prospects. In the course of those activities, he failed to pay appellant what was justly due for their work in drilling a number of wells and ultimately escaped financial responsibility by filing bankruptcy.

There was extensive litigation between appellant and several entities by which appellant, as third-party plaintiff, sought to bring those companies who had financial resources into the case for establishment of personal liability. In this process, Andrau, as general partner, ultimately became a judgment debtor and it was this judgment as entered by the district court in Big Horn County that developed into the execution sale later held for properties owned by Andrau in Fremont and Natrona counties.

In Andrau's course of business, he obtained funds from Petroleum Financing, Inc., and The Clarke Partnership which he failed, neglected or was unable to repay within agreed schedules. He came in time

---

1. Although we affirm the decision, we decline to determine that there was no reasonable cause for appeal and, consequently, attorney's fees will not be awarded.

to give a mortgage as security for those note indebtednesses, which is the mortgage with a priority in time of filing in Fremont County that anchors this litigation in its principal pursuit. Sometime after the Petroleum Financing mortgage had been duly recorded, appellant filed a copy of its judgment in Fremont County, earlier rendered in Big Horn County, and proceeded with execution sale of the Andrau properties.

The trial court relates this sequence in its Judgment and Decree and judgment for the ensuing litigation where mortgagees, as plaintiffs, sued to foreclose and establish the primacy of their lien over appellant as the holder of the judgment lien.

4. Plaintiffs' Mortgage of Oil and Gas Property Security Agreement and Financing Statement dated October 31, 1985, was recorded in the office of the County Clerk in and for Fremont County, Wyoming, on June 8, 1986, in Book 266 of Microfilm, Page 205, and was recorded in the office of the County Clerk in and for Natrona County, Wyoming, on April 28, 1988, as Instrument No. 442394. Plaintiffs' mortgage is senior and superior to the execution sale of Defendant Barnhart Drilling Co., which was held in Fremont County, Wyoming, on December 30, 1986, as Docket No. 24342 entitled Barnhart Drilling Co. vs. D.A.T.A. Big Horn Basin Company and William E. Andrau et al, and that Plaintiffs' mortgage is senior and superior to the Sheriff's Certificate of Sale which was recorded in the office of the County Clerk in and for Fremont County, Wyoming, on December 30, 1986 in Book 279 of Microfilm, Page 153 and the subsequent Sheriff's Deed recorded on April 2, 1987, in Book 284 of Microfilm, Page 615.

5. That any interest obtained by Defendant Barnhart Drilling Co., Inc. in leases numbered W-0321964, W-0310474, W-0310474-B, or W-0324315 as a result of said execution sale held on December 30, 1986, the Sheriff's Certificate of Sale recorded on December 30, 1986, in Book 279 of Microfilm, Page 153, and subsequent Sheriff's Deed recorded on April 2, 1987, in Book 284 of Microfilm, Page 615, all in Fremont County, Wyoming, is junior and inferior to the Plaintiffs' mortgage and any interest obtained by Barnhart Drilling Co., Inc. in and to the oil and gas leases set out herein is null and void as to Plaintiffs, and said Levy of Execution, Sheriff's Certificate of Sale and Sheriff's Deed are hereby adjudicated to be null and void as to Plaintiffs.

In October 1986, or about ten months after the entry of its Big Horn County judgment, appellant first filed its judgment in Fremont County and commenced execution sale resulting in a sheriff's sale on December 30, 1986 and issuance of a Sheriff's Deed on April 2, 1987. About a year later, appellees, as mortgagees, commenced this action to foreclose their mortgage and to invalidate, for priority purposes, the validity of the execution sale and Sheriff's Deed based on appellant's Big Horn County judgment of December 12, 1985.[2]

Appellees were clearly first in time and the trial court so held in ruling in their favor. Appellant does not dispute the basic facts of time priority, but contests the validity of the mortgage to provide a priority even when filed first in time.

This appeal presents a legal issue of the sufficiency of the priority in time rule and an evidentiary issue of the ineffectiveness of the first filed mortgage to sustain that legal priority. By statute and case decisions, Wyoming is a filing date priority jurisdiction. *Marple v. Wyoming Production Credit Ass'n*, 750 P.2d 1315 (Wyo. 1988); *Crozier v. Malone*, 366 P.2d 125 (Wyo.1961); W.S. 34–1–121. Filing requirements are the product of statute. *State ex rel. State Highway Com'n v. Meeker*, 75 Wyo. 210, 294 P.2d 603 (1956). Consequently, that subject is not in real controversy, leaving only the contested is-

---

2. The Big Horn County judgment when entered in that county in 1985 did not become a lien on real estate owned by Andrau in either Fremont or Natrona counties until action was taken pursuant to W.S. 1–17–304 to file the "transcript of the judgment record" in those counties. Comment, *How to Enforce a Money Judgment in Wyoming*, XX Land & Water L.Rev. 645 (1985).

sues as applied to challenge mortgagees and its mortgage to sustain that priority.

## III. STRUCTURE OF THE LITIGATION CONTROVERSY

The attack taken enumerates three bases for rejection of priority: 1) lack of fair consideration; 2) fraudulent conveyance; and 3) execution and delivery of the mortgage was accomplished for the purpose of hindering and delaying creditors, *e.g.* appellant in collection as a conspiratorial and fraudulent activity.

In reality, the challenge addresses whether the mortgage execution and filing came about within a good faith debtor-creditor relationship or was contaminated by contrived and conspiratorial activities to remove assets from their availability for creditor attachment. The subject was comprehensively pursued in discovery and then factually considered in a well presented trial, following which the trial judge determined on the evidence presented that appellant had failed to provide evidence sufficient to sustain the invalidating attack. He found a bona fide debtor-creditor relationship to have existed from which the mortgage was properly created as a normal business relationship security device.

## IV. RIGHT TO A JURY TRIAL

■ Mandated by consideration of an extensively pursued pleading record and complex allegations, the most difficult decision for appellate review involves appellant's challenge that it was improperly denied a jury trial on its "legal claims" against appellees.

Appellees, as promissory note payees and holders of the real estate mortgage, filed the suit to establish their mortgage priority over the then existent Sheriff's Deed held by appellant which was obtained by execution on its judgment and Sheriff's sale purchase. A receiver was appointed for the involved real estate interests which were derived from producing oil leases. Named as defendants in the complaint

were appellant as conflicting title interest claimant and Andrau and his operating entity as mortgagor and note payor.[3]

Not unexpectedly, Andrau did not answer and a default was entered on the note indebtedness and right of foreclosure on the then extinguished title interests in the Natrona and Fremont county properties. Appellant answered, counterclaimed and cross-claimed by challenging the bona fide nature of the promissory note and its secured indebtedness incorporated in the mortgage instrument. With prayer for priority of the Sheriff's Deed, appellant alleged that without an adequate remedy of law, it should be granted relief by counterclaim to remove the cloud of the mortgage lien as invalid. Pleaded charges against the mortgagees included conspiracy; false representations and pretenses and fraud upon creditors by combined or conspiratorial action with Andrau.

In effect, appellant requested by pleading and prayer a quiet title decree accompanied by an injunction against maintenance of the claim by appellees and also asked for a money judgment against appellees of $218,567.36 plus punitive damages. Accompanying the pleading was an appropriately filed demand for jury.

A judgment and decree of foreclosure based on the Andrau pleading default was entered July 1988, leaving then pending the priority questions between appellant with its Sheriff's Deed and mortgagees with their foreclosure proceedings. This state of the pleadings first brought a motion for summary judgment by mortgagees in March 1989 which was resisted by appellant and denied by the trial court by a decision letter finding a genuine issue of material fact for trial. Appellant followed with a motion to file a third-party complaint to bring into the litigation Devane Clarke, who was a principal in The Clarke Partnership and a shareholder in Petroleum Financing. This third-party complaint was based on conspiracy to commit fraud by obtaining and filing the real estate mortgage.

---

**3.** Andrau was then in bankruptcy, but the proceeding against him sought only foreclosure on a vacation of stay status and did not request a personal judgment.

Extensive discovery was pursued and additional pleadings were filed. In February 1990, the litigants and the trial court directly faced the question of appellant's right to a jury trial based on its counterclaim and third party complaint. As a conclusion of an extensive review and argument, appellant summarized:

In its conclusion, Barnhart Drilling Co. has alleged fraud, improper interference with executing upon a judgment, and civil conspiracy on the part of PFI and TCP, all of which are recognized tort theories. Barnhart should be allowed to recover all proximately caused damages against PFI and TCP upon proper proof of such claims. The Wyoming Uniform Fraudulent Conveyance Act, while it provides that the conveyance may be set aside and executed upon to the extent necessary to satisfy a judgment or claim, does not preclude the recovery of additional damages from a transferee under other recognized tort theories.

In response, the trial court determined:

The above matter having come before the Court upon its own motion to strike the demand for jury trial, the Court having reviewed the memos filed by counsel, the Court finds that this is not an action for the recovery of money only or specific real or personal property but that the major issues are equitable in nature or otherwise issues where there is not a right to a jury trial. This decision is based upon the case of *True v. Hi–Plains Elevator Machinery, Inc.*, 577 P.2d 991 (Wyo.1978) and related cases cited in the memo of plaintiffs. Therefore, the jury demand is set aside. We will proceed with a court trial at the same time and date earlier scheduled, unless counsel for both sides agree upon a different schedule.

We agree with the trial court. In simplified analysis, this litigation started with a mortgage foreclosure and claim to a priority by date of filing. The holder of a later lien by judgment and execution contested by challenging the validity for priority of the mortgage by essential assertion that the mortgage was created to defraud other creditors—specifically this judgment creditor. In overall approach, appellees defended the validity of their mortgage and appellant contested the validity of the mortgage.

In reality, the factual issue was the existence of a bona fide debt to authenticate the prudence of a creditor in obtaining a mortgage security. We recognize that in addition to the direct attack, appellant mounted a collateral campaign denominated to be a claim for money judgment. The issues were essentially equitable and claims for money damages were not intrinsic elements of this litigation where contestants sought lien priority.

The authority in present Wyoming law for right to a jury trial is comprehensively provided in *Hyatt Bros., Inc. ex rel. Hyatt v. Hyatt*, 769 P.2d 329 (Wyo.1989). We find that the underlying thesis of *Hyatt* of substance of the issue raised can be properly accommodated to the decision of the trial court that this proceeding was generically equitable in both complaint and counterclaim. If appellant succeeded in its attack on the mortgage, the mortgage would be invalidated and appellant's judgment lien priority advanced. If appellant failed in its attack on priority, it would likewise fail in parallel claims for money damages arising from the same conduct. The substance of the issues raised in context of the *Hyatt* rule was clearly equitable directed to fraud of creditor concept to invalidate a mortgage as to a third-party junior lien holder. This was not an action primarily legal in nature as we found to exist in *Hyatt*. We find no error in the trial court's decision on denial of a jury trial for a case which was essentially equitable in litigated essence. *True v. Hi–Plains Elevator Machinery, Inc.*, 577 P.2d 991 (Wyo.1978); *Hein v. Lee*, 549 P.2d 286 (Wyo.1976).

## V. SUFFICIENCY OF THE EVIDENCE TO SUSTAIN THE TRIAL COURT DECISION

■ Within the factual constituents of this case challenging the bona fide nature of an existent debt and resulting mortgage, the trial court, after trial, addressed its conclusions by a final decision letter:

On September 1, 1983, defendant Andrau, as a joint venturer with CMI Venture Number 1, borrowed $562,500.00 from plaintiff Petroleum Financing, Inc., as evidenced by a promissory note of that date. As a partner with CMI, Andrau was personally liable on the note. Also, he signed a partnership interest pledge agreement on that same date providing that if the proceeds of the pledge were not sufficient to pay the obligation in full, he would be liable for any deficiency. On June 15, 1984, Andrau signed a promissory note payable to plaintiff Clarke Partnership in the amount of $138,000.00. There was valuable consideration given for both notes. As of October 31, 1985, the notes were overdue and had not been paid in full. By documents bearing that date, Andrau, PFI, and the Clarke Partnership agreed to extend the notes in exchange for a mortgage from Andrau to PFI and the Clarke Partnership of his ownership of oil and gas interests in Natrona County and Fremont County, Wyoming. The extension agreements were not signed by all parties until May 28, 1986. The mortgage was not filed of record in Fremont County until June 8, 1986. Although Andrau was insolvent at the time, the extension agreements were fair consideration for the mortgage. The conveyance was made and received in good faith to secure an antecedent debt in an amount greater than the value of the property mortgaged.

On December 12, 1985, defendant Barnhart obtained a judgment against Andrau in Big Horn County, Wyoming. For approximately one month prior, Andrau had known that the judgment would be forthcoming. Plaintiffs did not know of the obligation to Barnhart until June 13, 1986. As early as May, 1985, Barnhart, through its attorney at that time, knew that Andrau owned interests in the Fremont County property. From the time Barnhart obtained its judgment against Andrau until Andrau filed for bankruptcy on October 12, 1986, Barnhart and its attorney at that time knew that Andrau had various properties worth well over $1,000,000.00 which apparently were available for satisfaction of the Barnhart judgment. Despite ample opportunity, Barnhart and its attorney at that time took no effective action against any of the Andrau properties until after the declaration of bankruptcy when Barnhart filed its judgment in Fremont County and obtained a sheriff's deed on April 2, 1987. The evidence is not sufficient to support the claims made by Barnhart against plaintiffs and Andrau that they were engaged in a conspiracy, interference with contractual activities, fraud, or other behavior designed to hinder or delay Barnhart in collection of its judgment. There is no evidence that Andrau attempted to conceal his assets. The mortgage in question here apparently was the only conveyance of his assets between the time of the Barnhart judgment and Andrau's bankruptcy. If Andrau and plaintiffs had intended to deprive Barnhart of the property in question, it would not have been reasonable for them to leave the property available for execution by Barnhart for nearly six months before recording the mortgage.

For appellate review, this case becomes a sufficiency of the evidence examination by application of our normal rule where a factual dispute exists. *Stanbury v. Larsen*, 803 P.2d 349 (Wyo.1990); *Coulthard v. Cossairt*, 803 P.2d 86 (Wyo.1990); and *ANR Production Co. v. Wyoming Oil and Gas Conservation Com'n*, 800 P.2d 492 (Wyo.1990). Appellant neither won the race to the county clerk's real estate filing window to establish priority nor now to the trial court after trial was held to prove fraud and disprove debt. Not only sufficient, but clear and definite evidence is provided by this record sustaining the findings and decision of the trial court. Within this relatively complex oil funding and investment activity, significant and persuasive evidence was introduced which supports the trial court's decision. There was a debt—there was a note—there was a

mortgage upon delinquency of payment and subsequent renewal to provide additional security and that mortgage was first filed which provided a superior lien over property interests otherwise available for satisfaction of judgments by executing creditors.

Affirmed.